2023 IL App (1st) 230953

No. 1-23-0953

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF CAROLINE HIPES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 20 D 5727 |
| | ) | |
| DIEGO LOZANO, | ) | Honorable |
| | ) | Marita C. Sullivan, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices Lampkin and D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1     Diego Lozano appeals the trial court's judgment for allocation of parental responsibilities, which restricts his parenting time with his daughter by requiring him to participate in Soberlink breath alcohol testing and certified drug and alcohol counseling. Lozano contends that (1) the trial court failed to apply the best interest standard of section 602.7 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/602.7 (West 2020)) in imposing restrictions on his parenting time, (2) the trial court's finding of serious endangerment that led to the imposition of

restrictions was against the manifest weight of the evidence, and (3) the restrictions that the trial court imposed are unnecessary. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Caroline Hipes married Lozano in 2010 and had one child, F.L., during their marriage. F.L. is currently 12 years old. On August 21, 2020, Hipes filed a petition for dissolution of marriage, citing irreconcilable differences. This appeal concerns only the restrictions on Lozano's parenting time, so we will recite only the facts that are germane to that issue.

¶ 4                                    A. Trial

¶ 5                                    1. Caroline Hipes

¶ 6     At trial, Hipes testified that Lozano's drinking began causing problems in their marriage in 2014. Lozano quit his job as a paramedic and began drinking nightly at home, becoming "withdrawn and *** angry and visibly intoxicated." When Lozano was intoxicated, "anything that [F.L.] or [Hipes] would do in the home would make him irritated"; he would slam objects and demand that Hipes leave the room. At some point in 2014, Lozano threatened to "drink himself to death" after suffering a head injury while intoxicated. Thereafter, Hipes and Lozano attended an Alcoholics Anonymous (AA) meeting together and reconciled.

¶ 7     In May 2015, Lozano was arrested for driving under the influence (DUI). The court presiding over the DUI case ordered Lozano to install an ignition interlock device in his vehicle, which he did. An ignition interlock device is a type of breath alcohol test that prevents a vehicle from starting unless the driver's breath alcohol is below a certain level. See *People v. McPeak*, 2012 IL App (2d) 110557, ¶ 2. In 2016, Lozano removed the ignition interlock device and voluntarily surrendered his driver's license. He lost his job as a postal carrier because he could not

drive the mail truck. Hipes later found Secretary of State notices indicating that, at least three times in November 2016, Lozano had tested positive for alcohol when he blew into the ignition interlock device.

¶ 8    By July 2017, Lozano was drinking nightly again, which F.L. witnessed. F.L. became "anxious and withdrawn" and would "sink into herself" and hide in her bedroom when she saw Lozano drinking. Early one morning that month, Lozano was so intoxicated that he was unable to stand, fell into a fish tank, and injured his head. Hipes could not get Lozano into her vehicle to take him to the hospital because "he was so combative and angry," and she was forced to call 911. F.L. did not witness this particular incident because she was staying with relatives. Hipes and F.L. then moved into a separate apartment. Lozano "escalated his drinking" and made "constant calls and *** threats" to "drink himself" to death if Hipes divorced him. In the fall of 2017, Lozano entered inpatient detoxification and rehabilitation. When he completed treatment, he and Hipes reconciled and moved back in together.

¶ 9    Lozano attended therapy and AA meetings for several months but stopped in early 2018. Hipes began finding empty vodka bottles around the home in the spring of 2018. One night in May 2018, Lozano came home from a bar "very drunk," and Hipes asked him to leave the house. Lozano choked her and threw her to the ground. Hipes called 911 and police arrested Lozano because Hipes had "a visible handprint on [her] neck." Lozano pled guilty to domestic battery, and Hipes obtained an order of protection against him. Thereafter, Lozano attended AA meetings and domestic violence classes.

¶ 10    Lozano had supervised parenting time with F.L. during the summer of 2018, primarily at his mother's house. That summer, F.L. was "visibly anxious," cried about minor variations from

her daily schedule, and was upset that Lozano "did not spend time with her." Hipes and Lozano reconciled again in August 2018.

¶ 11    Lozano remained sober for a few months, then stopped attending AA and therapy. He began drinking to intoxication daily and became "very consistently angry," accusing Hipes of cheating on him in front of F.L. F.L. again became anxious and withdrawn, but she attended socioemotional regulation therapy that helped manage her anxiety. In the fall of 2019, Lozano and Hipes had an argument while taking F.L. to school, and Lozano threw Hipes's cell phone at her, which F.L. witnessed. Hipes reported this incident to police. She wanted to obtain another order of protection against Lozano but was afraid that doing so would "escalate the violence." Following this incident, Hipes and Lozano separated and began discussing divorce.

¶ 12    In early 2020, Lozano completed another detoxification and rehabilitation program, but relapsed when Hipes would not allow him to move back into their home. Hipes tried to keep a schedule for Lozano to visit F.L. when he was sober, but he was "noticeably intoxicated, like slurring, smelled like alcohol often" during pickups and drop-offs. Hipes filed for divorce in August 2020.

¶ 13    Around that time, Lozano sent Hipes e-mails threatening not to bring F.L. home after parenting time.

¶ 14    Lozano sought treatment again in the fall of 2020. He had parenting time with F.L. via videoconference but Hipes ended those visits because it upset F.L. to see that Lozano was visibly intoxicated and disheveled during the calls.

¶ 15    Hipes did not want Lozano to have overnight parenting time with F.L. because he tended to drink at night. Hipes noticed that F.L. was less anxious and withdrawn and her "eating, sleeping,

[and] confidence" improved after May 24, 2021, when the court began requiring Lozano to take daily breath alcohol tests, as well as tests before parenting time. Since the court imposed breath alcohol testing on Lozano on May 24, 2021, F.L. had not reported seeing Lozano drinking, exhibiting signs of intoxication, or being abusive toward her.

¶ 16                                    2. Diego Lozano

¶ 17    Lozano testified that he drank daily in 2014. In the spring of 2016, he was convicted of DUI, which was his third DUI arrest and second conviction. Lozano acknowledged that he blew positive on the ignition interlock device in his vehicle at least twice and received notices from the Secretary of State regarding these positive tests. Following his 2016 DUI conviction, Lozano completed drug and alcohol education classes but did not seek substance abuse treatment and was not sober. Lozano denied that he was verbally abusive towards Hipes when he was drinking in 2017.

¶ 18    In September 2017, Hipes and F.L. moved out of the family home, and Lozano began inpatient detoxification and rehabilitation for the first time. He completed rehabilitation in October 2017, attended AA meetings, and was sober for approximately nine months.

¶ 19    Lozano relapsed in May 2018. One night that month, he returned home after drinking, grabbed Hipes by the throat, and pushed her to the floor. Police arrested him and Hipes obtained an order of protection against him. In the summer of 2018, Lozano was hospitalized for mental health issues and was intermittently sober. He moved back in with Hipes and F.L. in September 2018 and remained sober for approximately 6 to 10 months. In December 2019, he began drinking daily again. He attended inpatient detoxification and rehabilitation in February 2020, relapsed in March 2020, then sought treatment again in December 2020.

¶ 20 Lozano testified that he had been sober since December 8, 2020. At the time of trial, he was attending digital and in-person AA meetings but did not have a sponsor. Lozano claimed to attend AA "on a daily basis" but "absolutely would object" to providing proof of attendance. Lozano requested that the court impose no alcohol-related restrictions on his parenting time because he was sober and F.L. had never been harmed while in his care. He testified that F.L. enjoyed spending time with him, watching movies, dining out, bowling, and going to the pool in the summer.

¶ 21                          3. Breath Alcohol Evidence

¶ 22 One of the chief disputes at trial, and the primary dispute on appeal, concerns Lozano's use of breath alcohol testing devices. Prior to trial, on May 24, 2021, the court granted Lozano in-person parenting time with F.L. but required him to take breath alcohol tests using a system called BACtrack every day at 4:30 a.m. and 10:30 p.m., as well as one hour before parenting time. The court required Lozano to send breath alcohol test results to Hipes immediately. If Lozano missed or failed a test, parenting time would be suspended for 72 hours, and any further missed or failed tests would result in termination of his parenting time until further court order. On December 14, 2021, the court ordered Lozano to "ensure that real time breathalyzer blows be transmitted to Car[oline] Hipes from [BACtrack]."

¶ 23 It appears that Lozano used three different BACtrack breath alcohol testing systems in response to these orders. BACtrack Mobile Pro is a breath alcohol testing device that connects to a cell phone application called BACtrack View, which was supposed to provide real-time results and videos of Lozano taking the test to Hipes via a web hyperlink. However, Hipes testified that she "had never been able to receive those hyperlinks." Lozano used BACtrack Mobile Pro and

View for a two-week free trial period in May 2022. He stopped using that system when the free trial ended because it produced two positive tests that, according to Lozano, were false positives. Outside of the May 2022 trial period for BACtrack Mobile Pro, Lozano used devices called BACtrack Mobile and BACtrack s80, which he purchased online. Neither of these devices connect to a cell phone application or send video confirmation of tests, although Lozano sometimes took cell phone videos of himself using these devices and sent the videos to Hipes, along with screenshots of test results. Hipes testified that she could not access the results of tests that Lozano may have taken prior to sending her results. She questioned whether Lozano was sending her real-time breath alcohol test results, or whether he was drinking at night and waiting until he could test negative in the morning before sending the results to her.

¶ 24    Between April 20 and June 7, 2022, Lozano had six late breath alcohol tests, seven missed tests, and four tests that were positive for alcohol. He missed a test on April 24, 2022, and told Hipes that his cat ate through the breath alcohol testing device's electrical cord. When Hipes indicated that she might cancel parenting time, he found another cord and provided a negative test. Lozano also missed a test on April 27, 2022, and said that his "stomach was bothering him," which, according to Hipes, was one of his "consistent *** euphemisms that he would use for being hung over." The following day, Lozano tested positive. On May 17, 2022, Lozano tested positive on BACtrack Mobile Pro with a BAC of 0.034 at 8:18 a.m. and 0.018 at 8:38 a.m. However, the BACtrack Mobile and s80 devices produced negative results that day. On May 29, 2022, Lozano tested positive with a BAC of 0.019 on BACtrack Mobile Pro approximately an hour before the start of his parenting time, which caused Hipes to cancel parenting time. However, the two other devices produced negative tests that day. Lozano claimed that his exercise routine, combined with

low blood sugar, produced "ketones on his breath that cause a minor positive breathalyzer" and that the BACtrack Mobile Pro device was not accurate. Between June 22, 2022, and September 5, 2022, he had 10 late tests and 3 missed tests. As of trial, Lozano did not have a breath alcohol testing system that provided real-time results to Hipes. Lozano testified that he "kind of resent[ed]" questions about how he could prove that someone else was not blowing into his breath alcohol testing device to produce a negative result.

¶ 25                                    4. Maria Alma Alvarado

¶ 26    Maria Alma Alvarado is Lozano's mother. She testified that Lozano struggled with alcohol abuse for "an extended period of time" beginning in 2015. Alvarado acknowledged that Lozano choked Hipes in May 2018 but claimed that Hipes "provoked him and spun him around and verbally abused him." Lozano lived with Alvarado in the summer of 2018 and had parenting time with F.L. at Alvarado's house; F.L. never appeared sad or distraught during these visits. Alvarado acknowledged that Lozano drank in the summer of 2018, but also testified that he was not allowed to drink when he was at her house. Alvarado had not seen Lozano drink alcohol since December 2020 and believed that real-time monitoring of his alcohol use was unnecessary. She testified that Lozano attended AA meetings and was "very serious about his membership in the organization."

¶ 27                              B. Trial Court's Rulings

¶ 28    On May 19, 2023, the trial court entered a judgment for allocation of parental responsibilities.[1] The court found that Hipes was "a very credible witness" and that her concerns about whether Lozano was sober were "valid and plausible." The court also found that, while Lozano "loves [F.L.] and wants a close and loving relationship with her," his testimony

---

[1]The court read the substance of this judgment into the record on May 2, 2023.

demonstrated intense misplaced anger toward Hipes, which "severely impacted [his] credibility." The court explained that Lozano's resistance to real-time breath alcohol testing was "telling" and "alarming," particularly his resentment toward questions about whether someone else could blow into his breath alcohol testing device to produce a negative result. The court highlighted that Lozano had no AA sponsor and refused to provide proof of his attendance at AA meetings. The court also contrasted Lozano's claim that he could not afford counseling with his testimony that he spent $1913 on sports betting between August and November 2022.

¶ 29    The court allocated Lozano's parenting time as one evening a week during the school year and one afternoon and evening during the summer, plus alternating weekends and on certain holidays. Regarding restrictions on Lozano's parenting time, the court "reviewed and considered each factor of 750 ILCS [5/]602.7 and 603.10" and found, by a preponderance of the evidence, that Lozano seriously endangered F.L.'s mental, moral, physical, and emotional health due to his "long struggle with alcoholism." The court concluded that Soberlink breath alcohol testing was an appropriate restriction because it would "provide the necessary assurance and accountability that Mr. Lozano is maintaining his sobriety," particularly considering Hipes's concern that Lozano was still drinking at night. The court ordered Lozano to participate in a Soberlink Level 2 Monitoring Plus plan for two years, funded by the marital estate; to attend one year of counseling with a certified alcohol and drug counselor; and to provide Hipes with proof of his counseling attendance.[2] In the first year of Soberlink testing, Lozano must test daily at 8 a.m. and 10 a.m., and

---

[2]According to Soberlink's website, the "Level 2—Daily Testing Program includes a set schedule and is the most effective way to monitor alcohol use and document sobriety for the Monitored Client. Testing times are managed by the Soberlink system, which sends reminder text messages and documents missed tests." *Daily Testing Program to Monitor Alcohol Use Level 2*, Soberlink, https://www.soberlink.com/divorce/family-law-level-2-daily-testing (last visited Dec. 13, 2023)

on days that he has parenting time, he must test at 8 a.m., 12 p.m., 4 p.m., and 10 p.m., plus 15 minutes before and after parenting time. In the second year, Lozano must test daily at 8 a.m. and 10 a.m., plus 24 hours before parenting time. These requirements are currently conditions of parenting time. Any positive tests, missed tests, or refusal to participate and provide proof of attendance in counseling will result in the suspension of parenting time.

¶ 30    Lozano timely appealed.

¶ 31                                    II. ANALYSIS

¶ 32    On appeal, Lozano challenges the trial court's restrictions on his parenting time—namely, the requirement that he participate in Soberlink breath alcohol testing and certified drug and alcohol counseling. Lozano contends that the trial court failed to apply the best interest standard of section 602.7 in imposing restrictions. He also argues that the trial court erred in finding that his conduct seriously endangered F.L. and that the restrictions on his parenting time are unnecessary.

¶ 33    The Act requires a trial court to allocate parenting time according to the child's best interest. 750 ILCS 5/602.7(a) (West 2020). Initially, both parents are presumed to be fit, and "the court shall not place any restrictions on parenting time as defined in Section 600 and described in Section 603.10, unless it finds by a preponderance of the evidence that a parent's exercise of parenting time would seriously endanger the child's physical, mental, moral, or emotional health." *Id.* § 602.7(b). Following a hearing, a court may enter orders necessary to protect the child "if the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously

---

[https://perma.cc/9LK2-46ZY]. The Level 2 Plus program includes real-time test results via e-mail and offers two types of breath alcohol testing devices. *Id.*

endangered the child's mental, moral, or physical heath or that significantly impaired the child's emotional development." *Id.* § 603.10(a). Orders may include "any limitation or condition placed on parenting time," such as reducing, eliminating, or adjusting decision-making, parenting time, or supervision. They also may require a parent to abstain from possessing or consuming alcohol during parenting time and within a specific period before parenting time. *Id.* §§ 600(i), 603.10(a)(1), (2), (5).

¶ 34                    A. Legal Standard Governing Restrictions on Parenting Time

¶ 35    Lozano first argues that the trial court erred because it did not apply the best interest standard of section 602.7 in imposing restrictions upon his parenting time. The question of whether the trial court applied the correct legal standard is a question of law, which we review *de novo*. *1350 Lake Shore Associates v. Randall*, 401 Ill. App. 3d 96, 102 (2010).

¶ 36    Lozano misunderstands the difference between *allocating* parenting time and *restricting* parenting time. Allocation of parenting time refers to the assignment of time during which a parent is responsible for a child's care. See 750 ILCS 5/600(e) (West 2020). Section 602.7 governs the allocation of parenting time and requires the court to allocate parenting time "according to the child's best interests." *Id.* § 602.7(a). Section 602.7(b) sets out 17 factors that the court must evaluate to determine the child's best interests for purposes of allocating parenting time. *Id.* § 602.7(b)(1)-(17). By contrast, section 603.10 governs restrictions on parenting time. *Id.* § 603.10. A restriction on parenting time is a limitation or condition placed on parenting time once parenting time has been allocated. See *id.* § 600(i). Restricting parenting time requires a showing, by a preponderance of the evidence, that a parent engaged in conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional

development. *Id.* § 603.10(a); see *id.* § 602.7(b) (a court may not restrict parenting time unless it makes a finding of serious endangerment).

¶ 37    In this appeal, Lozano does not challenge the trial court's allocation of parenting time, *i.e.*, how much time with F.L. he was granted. He only challenges the restrictions that the trial court placed on his parenting time, *i.e.*, the requirements that he engage in Soberlink breath alcohol testing and certified drug and alcohol counseling. The best interest standard of section 602.7(a) does not apply to these restrictions; rather, the serious endangerment standard of section 603.10(a) applies. See *In re Marriage of Anderson*, 130 Ill. App. 3d 684, 687 (1985) ("the legislature prescribed two different tests concerning the modification and restriction of visitation rights"). The serious endangerment standard is different from, and more stringent than, the best-interest standard. *In re Parentage of K.E.B.*, 2014 IL App (2d) 131332, ¶ 33; see *In re Marriage of Chehaiber*, 394 Ill. App. 3d 690, 696-97 (2009) (the best interest standard applies to "a noncustodial parent's right to visitation in the first place," whereas restrictions look to "the suitability of the parent whose visitation would be curtailed"). Lozano's claim that the trial court "erred as a matter of law restricting [his] parenting time, absent consideration of the relevant section 602.7(b) factors" mistakenly conflates the two standards.

¶ 38    To the extent that Lozano suggests that the trial court did not apply the section 602.7(a) best interest standard in its allocation ruling, the record defeats that claim. The written judgment for allocation of parenting time states that, "[a]s to the issue of parenting time, the Court reviewed and considered each factor of 750 ILCS [5/]602.7." Similarly, during its oral ruling, the trial court stated that it "reviewed 602.7" and explained that "[u]nder 602.7(a), [the court is] to allocate parenting time according to a child's best interest." While the court did not make explicit findings

as to each of the 17 best interest factors of section 602.7(b), it is not required to do so. See *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 43.

¶ 39     As part of this argument, Lozano complains that F.L.'s representative did not file a pretrial memorandum, pursuant to section 506(a)(3) of the Act (see 750 ILCS 5/506(a)(3) (West 2020)), and the trial court did not interview F.L. These complaints address the sufficiency and weight of the evidence before the trial court, not whether the trial court applied the correct legal standard. Accordingly, we find that the trial court applied the correct legal standards in its allocation and restriction of Lozano's parenting time.

¶ 40                              B. Restrictions on Parenting Time

¶ 41     Lozano also challenges the merits of the restrictions that the trial court imposed. He contends that the evidence did not support a finding of serious endangerment and that the restrictions the trial court imposed were unnecessary.

¶ 42                              1. Serious Endangerment

¶ 43     Restricting parenting time under section 603.10 is a two-step process. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 58. We will discuss the two steps separately. At the first step, the trial court must determine whether the parent's conduct seriously endangered the child. *Id.*; 750 ILCS 5/603.10(a) (West 2020). The party seeking to restrict parenting time has the burden of proving serious endangerment. *Mayes*, 2018 IL App (4th) 180149, ¶ 56; 750 ILCS 5/603.10(a)(1) (West 2020). On appeal, we consider whether the court's finding of serious endangerment is against the manifest weight of the evidence. *Mayes*, 2018 IL App (4th) 180149, ¶ 59 (citing *Best v. Best*, 223 Ill. 2d 342, 348-49 (2006)). A ruling is against the manifest weight of the evidence

when, upon review of the entire record, the opposite conclusion is clearly evident. *Id.* (citing *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006)).

¶ 44    The trial court's finding of serious endangerment is not against the manifest weight of the evidence. There is no dispute that Lozano has struggled with serious alcohol addiction and abuse since 2014, with brief alternating periods of sobriety and relapse. The evidence established that Lozano has relapsed frequently and, in most cases, regardless of treatment or consequences. For example, Lozano relapsed immediately after completing detoxification and rehabilitation in February 2020, and after completing a similar program in 2017. He also relapsed after (1) his third DUI arrest and second conviction, (2) the loss of his driver's license and his job as a postal carrier, (3) his arrest for, and conviction of, domestic violence, and (4) his suffering two head injuries while intoxicated. This longstanding pattern of relapse indicates that Lozano is at serious risk of abusing alcohol at any time, including when he is responsible for F.L.'s mental, emotional, and physical well-being. Hipes's testimony that Lozano tends to drink heavily at night raises concern that he may be unable to respond to an emergency F.L. might have at night if he is relapsing. The ongoing risk of relapse supports the trial court's finding of serious endangerment. See *In re Marriage of Padiak*, 101 Ill. App. 3d 306, 313-14 (1981) (the question of endangerment encompasses the potential for harm in the future, and a court need not wait until a child has suffered " 'actual tangible harm' " (quoting *Jarrett v. Jarrett*, 78 Ill. 2d 337, 348-49 (1979))).

¶ 45    While Lozano testified that he has been sober since December 2020, several pieces of evidence undermine that claim. Lozano tested positive for alcohol on breath alcohol tests multiple times in April and May 2022. While Lozano insisted that those results were "false positives" caused by post-exercise breath chemicals, no expert witness testified in support of that speculation.

The more straightforward and reasonable inference is that the breath alcohol testing device detected alcohol because Lozano had been drinking the night before he tested in the morning. Furthermore, Lozano's resistance to using a breath alcohol testing system that produces immediate and verifiable results to Hipes, his lack of an AA sponsor, and his objection to providing proof of his attendance at AA meetings all support the trial court's skepticism that he has been completely sober since December 2020.

¶ 46    There is little question that Lozano's alcohol abuse repeatedly caused mental and emotional harm to F.L. Hipes testified that F.L. became anxious and withdrawn when she saw her father drinking and when his drinking disrupted their visitation schedule. Specifically, F.L. would hide in her bed when she saw Lozano drinking and when he argued with or verbally abused Hipes. F.L.'s anxiety about her father's drinking manifested as her becoming extremely upset and crying if anything in her daily routine did not go according to schedule. She required socioemotional regulation therapy to help manage her stress.

¶ 47    Hipes also explained that F.L.'s mental state improved after the court imposed breath alcohol testing requirements for Lozano's parenting time in May 2021. To put it simply, the evidence established that Lozano's parenting time with F.L. is productive and positive when he is required to prove that he is sober, but destructive and negative when he is not.

¶ 48    Our analysis in this case is consistent with the holding in *In re Marriage of Palarz*, 2022 IL App (1st) 210618. In *Palarz*, the evidence established that the father drank to excess, had been cited for DUI, was verbally abusive to his wife in front of their child, suffered from mental health issues that required hospitalization at one point, and struck his wife with his phone. *Id.* ¶¶ 15, 17. The trial court required that the father's parenting time with his child be supervised, and this court

affirmed "based primarily on [the trial court's] finding that [the father's] alcohol use posed a serious endangerment to" the child. *Id.* ¶¶ 19-20, 31. That ruling "was supported by credible testimony from [the mother] that [the father] would frequently drink to excess and become inebriated," as well as unrebutted evidence that the father had been cited for DUI. *Id.* ¶ 31. All the factors that led to restrictions on the father's parenting time in *Palarz* exist in this case. Lozano has a history of drinking to excess, has physically and verbally abused Hipes in front of F.L., and suffers from mental health issues that required hospitalization at one point. While *Palarz* would arguably support solely supervised parenting time in this case, the trial court has allowed unsupervised parenting time so long as Lozano proves that he is sober via real-time breath alcohol testing. This is a reasonable restriction.

¶ 49    Lozano repeatedly claims that the trial court's judgment "lacks any explicit factual findings of serious endangerment." This is inaccurate. Paragraph Q of the findings of fact, on page four of the judgment, states that "[t]he Court finds, by a preponderance of the evidence, that Mr. Lonzano presents a serious endangerment to [F.L.]'s mental, moral, physical, and emotional health." Paragraph S, on the same page, states that "[t]his Court finds that there is serious endangerment without Soberlink safeguards. Soberlink will provide the necessary assurance and accountability that Mr. Lozano is maintaining his sobriety." In its oral ruling, the court stated: "I specifically find based on the credible testimony of Ms. Hipes and Mr. Lozano who both detailed the years long struggle of Mr. Lozano with alcoholism that by a preponderance of the evidence [F.L.]'s physical, mental, and emotional health would be endangered without the Soberlink safeguards in place." Lozano's claim that the trial court did not make a finding of serious endangerment is simply erroneous.

- 16 -

¶ 50    Lozano argues that *In re Marriage of Staszak*, 2022 IL App (2d) 210427-U, supports reversing the Soberlink testing restriction on his parenting time.[3] We disagree. In *Staszak*, the Second District affirmed the trial court's finding that the father's past alcohol abuse did *not* seriously endanger his children because he "had complied with using Soberlink for over two years" and passed 94% of his Soberlink tests during that time. *Id.* ¶ 61. That is inapposite to this case, in which the trial court *did* make a finding of serious endangerment based on Lozano's past alcohol abuse and Lozano did not demonstrate *any* compliance with Soberlink testing. Lozano's main contention in this appeal is that he opposes Soberlink testing, not that he has passed 94% of Soberlink tests over two years. The trial and appellate courts in *Staszak* imposed the exact requirement that the trial court imposed in this case: two years of Soberlink breath alcohol testing as a condition of parenting time.

¶ 51    Two cases that Lozano cites do not involve the key endangering factor in this case: alcohol abuse and its effect on the child's well-being. See *In re Marriage of Lombaer*, 200 Ill. App. 3d 712 (1990); *In re Marriage of Neat*, 101 Ill. App. 3d 1046 (1981). Lozano's cited cases that do involve alcohol abuse support the trial court's ruling. See, *e.g.*, *In re Marriage of Oertel*, 216 Ill. App. 3d 806, 815 (1991) (explaining that "past alcohol abuse by the custodial parent [is] a significant factor in the affirmance of circuit court decisions to modify custody" even if there is evidence that the parent has stopped drinking); *In re Marriage of Neeld*, 96 Ill. App. 3d 40, 48 (1981) (affirming the trial court's transfer of custody to the father because the mother's "involvement with alcohol" "was

---

[3]Several cases that Lozano cites are unpublished orders under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023), which are not precedential unless cited to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case or cited as persuasive authority if the order was entered after January 1, 2021. Lozano fails to disclose the unpublished status of these orders because he omits the "U" at the end of the case numbers. See, *e.g.*, *Staszak*, 2022 IL App (2d) 210427-U; *In re Marriage of Nolen*, 2019 IL App (5th) 180435-U; *O'Halleran v. Harder*, 2016 IL App (1st) 151990-U.

serious enough to impair her ability to function" even though she "had made substantial progress in treating the effects of her alcoholism"). Accordingly, we find that the trial court's finding of serious endangerment was not against the manifest weight of the evidence.

¶ 52                                    2. Necessity of Restrictions

¶ 53    Lozano also challenges the necessity of the restrictions that the trial court imposed. Specifically, he argues that the court's breath alcohol testing requirement is "excessive, onerous, and likely to disrupt [his] parenting time" with F.L. He also contends that his participation in certified drug and alcohol counseling is unnecessary because he already attends psychiatric counseling.

¶ 54    This argument concerns the second step of the section 603.10 restriction test. If the trial court finds, by a preponderance of the evidence, that a parent's conduct seriously endangered his or her child, then the court must determine what restrictions are necessary to protect the child. *Mayes*, 2018 IL App (4th) 180149, ¶ 58; 750 ILCS 5/603.10(a) (West 2020). Among other restrictions, the court may order "a parent to abstain from possessing or consuming alcohol *** while exercising parenting time with the child and within a specified period immediately preceding the exercise of parenting time" and to "complete a treatment program *** for drug or alcohol abuse." 750 ILCS 5/603.10(a)(5), (8) (West 2020). We review the trial court's determination that certain restrictions are necessary for an abuse of discretion. *Mayes*, 2018 IL App (4th) 180149, ¶ 61. A court abuses its discretion when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *In re Marriage of Dea*, 2020 IL App (1st) 190234, ¶ 18.

¶ 55    We find that the trial court did not abuse its discretion in requiring Lozano to engage in Soberlink breath alcohol testing and certified drug and alcohol counseling. Both restrictions are tailored to address the issues in this case and fall squarely within the authorized restrictions of section 603.10(a)(5) and (8). See 750 ILCS 5/603.10(a)(5), (8) (West 2020). With respect to breath alcohol testing, the issue is straightforward: How can Hipes verify that Lozano is sending her legitimate, real-time breath alcohol results? Soberlink will provide real-time results to Hipes via e-mail. Similarly, the requirement that Lozano attend certified drug and alcohol counseling and provide proof of attendance to Hipes will resolve the ambiguity about whether he is, in fact, engaged in Alcoholic Anonymous. Together, these two restrictions will ensure that Lozano is maintaining sobriety and that his parenting time with F.L. will not cause further serious endangerment to her mental and emotional health.

¶ 56    Lozano complains that Soberlink is more expensive than BACtrack and "there is simply no empirical data that proves one device's superiority over the other." His complaint about the cost of Soberlink testing is baseless. The court ordered Soberlink costs to be paid from the marital estate funds, so Lozano will not pay for breath alcohol testing solely out of his own pocket. Furthermore, the hodgepodge of breath alcohol testing systems that Lozano used in 2021 and 2022 produced conflicting BAC results and could not reliably transmit results to Hipes in real time. They also appear to be vulnerable to the user's manipulation. If nothing else, the consistent use of one reliable breath alcohol testing system will be an improvement. We also note that there is no evidence in the record, other than Lozano's self-serving testimony, to support his claim that Soberlink breath alcohol tests can and do transmit "false positive results."

¶ 57    Lozano also argues that the frequency of testing will disrupt his parenting time. However, Lozano has been required to engage in twice-daily breath alcohol testing since May 2021, and he did not claim at trial that such testing disrupted his parenting time with F.L., other than when he tested positive or was significantly late in testing. Most, if not all, breath alcohol testing occurs when Lozano is *not* with F.L., so there is no "disruption" to the parenting time that Lozano spends with F.L.

¶ 58    Finally, Lozano argues that requiring him to attend certified drug and alcohol counseling is unnecessary because he attends psychiatric counseling. Certified drug and alcohol counseling differs from general psychiatric counseling and is targeted to address Lozano's alcohol addiction and abuse. We agree with the trial court that Lozano's claim that he cannot afford drug and alcohol counseling is undermined by his apparent ability to gamble on sports. Accordingly, we find that the trial court did not abuse its discretion in restricting Lozano's parenting time.

¶ 59    We note that the trial court's judgment for allocation of parental responsibilities only restricts Lozano's parenting time for two years. Unrestricted parenting time remains a possibility for Lozano in the future, so long as he complies with the current restrictions and shows that he is sober when he is seeing his daughter.

¶ 60                                III. CONCLUSION

¶ 61    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 62    Affirmed.

_____

*In re Marriage of Hipes*, **2023 IL App (1st) 230953**

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-D-5727; the Hon. Marita C. Sullivan, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | Diego Lozano, of Oak Park, appellant *pro se*. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Jill M. Peters, of the Law Offices of Jill M. Peters, LLC, of Chicago, for appellee Caroline Hipes. |
| | Kathryn L. Ciesla, of Ciesla Beeler, LLC, of Northfield, for other appellee. |

_____