NOTICE

Decision filed 09/15/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250259-U

NO. 5-25-0259

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| EROICA RHODES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 24-FA-21 |
| | ) | |
| KEVIN TESAR, | ) | Honorable |
| | ) | Michael A. Fiello, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice McHaney and Justice Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court's award of unsupervised parenting time is affirmed where appellant failed to request a restriction pursuant to 750 ILCS 5/602.7 (West 2022) from the circuit court, thereby forfeiting the argument on appeal.

¶ 2   Eroica Rhodes was awarded a majority of parenting time for the parties' daughter, E.R.T., subject to Kevin Tesar's unsupervised parenting time of every other weekend. Rhodes appeals, arguing that the circuit court erred in awarding Tesar unsupervised parenting time. She contends that his parenting time should be restricted and that this matter should be remanded to the circuit court for the imposition of certain restrictions. For the following reasons, we affirm the circuit court's ruling.

1

¶ 3                                    I. BACKGROUND

¶ 4      Initially, we issued a summary order on August 5, 2025, affirming the judgment of the circuit court due to the absence of a report of proceedings for the hearing held on March 13, 2025. Rhodes timely filed a petition for rehearing, asserting that she had requested and paid for a report of the proceedings; however, the court reporter failed to file it. Despite Tesar's written response that we deny the request, we granted the petition and withdrew our summary order. Rhodes subsequently supplemented the record on appeal with a report of proceedings on August 25, 2025. This disposition contains the supplemented report of proceedings as well as an analysis thereof in relation to the issues on appeal. A summary of the facts and the procedural history taken from the pleadings and written orders of the circuit court pertinent to an understanding of the issues on appeal is set forth as follows.

¶ 5                           A. Temporary Order and Mediation

¶ 6      On March 6, 2024, Eroica Rhodes filed a petition against Kevin Tesar for judicial determination of parentage regarding E.R.T., born July 10, 2015, and for entry of an order for child support. A temporary relief hearing occurred on July 9, 2024, and the circuit court entered several orders. One pertinent to this appeal was the judgment of temporary allocation of parental responsibilities. The judgment declared Tesar to be the natural father of E.R.T. Rhodes was awarded significant decision-making responsibilities for education, healthcare, religion, and extracurricular activities, and Tesar was granted supervised parenting time of one hour per week. Roxanne Tesar, Tesar's mother, was to serve as the supervisor and submitted an affidavit confirming that she would ensure Tesar adhered to certain rules during his parenting time, including abstaining from alcohol and drugs, and that she would terminate his parenting time if he failed to do so.

¶ 7     On October 2, 2024, the circuit court ordered the parties to attend mediation. On January 8, 2025, a mediator's report was filed which indicated that the parties had not reached an agreement regarding parenting time, but had reached a complete agreement regarding the allocation of parental responsibilities. The matter was scheduled for hearing on March 13, 2025, regarding the allocation of parenting time and parental responsibilities.

¶ 8                           B. Pretrial Pleadings

¶ 9     On February 26, 2025, Tesar filed "Respondent's Contested Statement of Issues." He indicated that the supervision was becoming difficult for his mother, Ms. Tesar, due to her travel and work obligations. He stated that she had to take time off work and that supervising the parenting time had been a financial hardship for her. Tesar requested that the supervision requirement be lifted and that his parenting time be increased to every weekend, as that would be in the best interests of E.R.T. As to the allocation of parental responsibilities, he stated, "The Respondent has full authority over religious decisions for [E.R.T.], as agreed upon during mediation. All other major decision-making responsibilities, including those related to education, health, and extracurricular activities, remain jointly allocated between both parents."

¶ 10    Rhodes filed a "Petitioner's Pretrial Submission" which included a witness list and one exhibit, but did not include any position or argument regarding parenting time or allocation of responsibilities.

¶ 11                          C. Final Hearing

¶ 12    The matter proceeded to hearing on March 13, 2025. The circuit court acknowledged receipt of Tesar's proposed parenting plan, and Rhodes stated that she was requesting that the

3

temporary order be made permanent. For clarity, each witness's testimony is summarized individually, even if they testified more than once.[1]

¶ 13                                    1. *Eroica Rhodes*

¶ 14    Rhodes met Tesar a decade ago, and Tesar vacated their mutual residence in February 2024. During their cohabitation, there were instances in which she believed Tesar misused Adderall. He did not administer the medication daily, thereby allowing him to accumulate a supply for the weekend, and subsequently snorted it when he was exceptionally fatigued. Although she did not directly observe him snorting the Adderall, she noted powder on his nose and residue on the tray. She did not oppose his use of cannabis, as she was also prescribed it. Tesar disclosed to her his use of LSD, which she observed him consuming. He occasionally used cocaine, but this became a significant concern approximately one year prior to the hearing. Additionally, he used methamphetamine immediately before moving out. He occasionally experienced outbursts and often abstained from sleep for several days. She confronted Tesar about his substance use approximately once a month, and she did not believe his assertion that he had been drug-free since the commencement of this legal matter.

¶ 15    Rhodes requested that Tesar's parenting time remain supervised, citing her belief that Tesar's mother "keeps him in check." Rhodes acknowledged that Tesar attended all of his visits and believed that E.R.T. enjoyed his company. She never observed E.R.T. express fear or reluctance to visit Tesar, nor had E.R.T. indicated any desire not to see Tesar. The supervised visits proceeded without incident, with Tesar's mother fulfilling her supervisory responsibilities. Rhodes admitted that since February 17, 2024, Tesar had demonstrated sobriety.

---

[1]The initial record on appeal did not contain a report of proceedings for the March 13, 2025, hearing. After the issuance of a summary order making note of the absence of the report of proceedings, the record on appeal was supplemented.

¶ 16                              2. *Eric Bowers*

¶ 17    Eric Bowers had known Tesar for 10 years and never observed him taking Adderall; however, he had observed symptoms indicative of its use. He described Tesar as experiencing mood swings and being on edge. Tesar disclosed to him that he had used LSD on multiple occasions, with the initial use dating back to 2015 or 2016, and the most recent being in 2022. Bowers acknowledged that he also used LSD when Tesar did. Although Bowers never personally observed Tesar ingest cocaine or methamphetamine, Tesar admitted to having used both substances. Over the past decade, Tesar confessed to substance abuse but assured him of his intention to change. The longest duration Bowers observed Tesar to remain free of drugs was approximately seven or eight months during the COVID pandemic. Bowers expressed concerns regarding Tesar's request for unsupervised parenting time due to his history of drug use.

¶ 18                              3. *Mary Kane*

¶ 19    Mary Kane had known Tesar for eight years. She had never seen Tesar take Adderall, but she observed him smoking marijuana and ingesting LSD. Tesar admitted to her that he had used cocaine and methamphetamine approximately 18 months prior to the hearing. Kane expressed concerns regarding Tesar's request for unsupervised parenting time due to his history of drug use. She noted that he becomes engrossed and distracted in his television programs, and that he had not had to be responsible for caring for E.R.T.

¶ 20                          4. *Annie Rhodes-Davenport*

¶ 21    Annie Rhodes-Davenport, the daughter of Rhodes, aged 21, testified that she previously resided with Rhodes and Tesar but moved out one month prior to Tesar's departure. She indicated that her leaving was motivated by the constant disputes between Rhodes and Tesar.

¶ 22    Rhodes-Davenport testified regarding an incident in March 2024 when Tesar visited her workplace, a tattoo parlor. He stated that he was there to "get his confession of love" for her

tattooed on his arm and insisted on showing her a letter. In this correspondence, he claimed he had never been attracted to children, but expressed attraction to her. The letter also contained nonsensical statements, such as "[t]his also entails notions of being able to traverse the cosmos; false visions of war having to do with light sabers." This letter was subsequently admitted as an exhibit. Tesar admitted that he had been in love with her since she was nine years old. Rhodes-Davenport found his behavior both surprising and disturbing and instructed him to leave the premises. His conduct appeared highly erratic, characterized by pacing and dilated, bloodshot eyes. His actions resembled his behavior when he was under the influence of substances.

¶ 23                                    5. *Kevin Tesar*

¶ 24     Tesar resided with Rhodes for a period spanning approximately 8 to 10 years, and voluntarily moved out in January 2024. Tesar used Adderall while he lived with Rhodes; however, he did not regard this as abuse, as he held a valid prescription from his nurse practitioner at Harrisburg Medical Clinic. Tesar also used cannabis, but not in an abusive manner. Additionally, he used cocaine and methamphetamine. Beginning in early 2024, he attended therapy for drug addiction but discontinued this treatment one month prior to the hearing, citing his belief that his faith was sufficiently strong to support his recovery efforts and his belief that continued drug use was unnecessary. He started attending Narcotics Anonymous in April 2024, and has continued his involvement since that time. Since May 2024, he has maintained sobriety, representing his longest period of abstinence.

¶ 25     Tesar testified about an occasion in November or December of 2023, when he nearly fell asleep while driving, requiring E.R.T. to hold his hand. He was not under the influence at that time; he was taking a break, which contributed to his fatigue.

¶ 26    Tesar resided in his own home, which had five bedrooms. He typically exercised his parenting time at his residence or at church. He has been employed as a web application code developer since August 12, 2024, and has been performing his duties remotely.

¶ 27    Rhodes had invited him to attend E.R.T.'s basketball practices, which he indeed attended. His mother was willing to continue serving as the supervisor; however, coordinating their schedules for his visits proved to be challenging. He expressed the sentiment that he had made significant progress, and he did not intend to resort to drug use again.

¶ 28    Concerning the day he appeared at Rhodes-Davenport's workplace, he was under the influence of cocaine that he had consumed the previous day, and wrote the letter while intoxicated that night. He fully understood why Rhodes-Davenport and Rhodes were upset by his actions and recognized the inappropriateness of his conduct. Tesar indicated that he had discussed issues related to inappropriate feelings of intimacy and drug and substance abuse with a counselor.

¶ 29                        6. *Roxanne Tesar*

¶ 30    Roxanne Tesar, the mother of Tesar, prioritized E.R.T.'s interests above her own. She observed a change in Tesar since he ceased using drugs, and he regularly attended church with her. She opined that he was capable of feeding, clothing, and providing shelter for E.R.T. Furthermore, she believed that he could responsibly manage E.R.T.'s medications and transport her to activities. Tesar consistently attended all scheduled visits with E.R.T., and she never observed any instances of mental or physical abuse by him. She never heard him discuss inappropriate topics in the presence of E.R.T. and considered him capable of being alone with E.R.T. safely. E.R.T. enjoyed spending time with him.

¶ 31    Ms. Tesar is employed as an usher, and her income depends on her work schedule; she receives payment solely when she is working. She expressed her willingness to continue supervising visits if required by the court. There had been instances where she could have worked

but elected not to do so in order to supervise a visit. As a result, she had to forego paid working hours to fulfill her responsibilities as a supervisor.

¶ 32 Whenever E.R.T. would arrive for a visit, she was generally excited and very happy. When it was time to depart, she often expressed a desire to remain longer. Ms. Tesar had not observed Tesar experiencing difficulty in managing basic parenting responsibilities and noted significant improvement.

¶ 33 Ms. Tesar was initially aware of Tesar's drug problem approximately two years prior. Based on her observations of his behavior around E.R.T. and herself, she believed he had regained control over his substance use. He committed his life to the Lord and was actively practicing the teachings of the Bible. She observed a significant transformation in him; he was considerably different from his former self. However, she did believe that it would be in E.R.T.'s best interests for Tesar to continue his substance abuse treatment.

¶ 34                                    D. Final Order

¶ 35 The circuit court entered a detailed ruling on March 24, 2025. The judgment indicated that no evidence was presented regarding the parties' agreement on the allocation of decision-making responsibilities; however, Tesar's pretrial memorandum stated that the parties had agreed in mediation to have joint decision-making on all matters except for religion, for which Tesar was to have sole responsibility. Based on this representation, the circuit court found that the agreement should be approved.

¶ 36 The circuit court then analyzed the best interest factors contained in section 602.7 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/602.7 (West 2022)). The order indicated that Rhodes desired Tesar's parenting time to continue to be supervised, but Tesar wanted it to be unsupervised. The circuit court's analysis included the

8

observation that Rhodes performed the majority of the caretaking functions for E.R.T. during the 24 months preceding the filing of the petition, as during that time, Tesar abused drugs.

¶ 37   The circuit court further indicated that Rhodes did not have any mental or physical impairments that impacted her ability to care for the child. It noted that Tesar suffered from ADD and had a prescription for Adderall, which he had been taking for eight years. It stated that Tesar had a significant drug history, which included the use of LSD, cocaine, methamphetamines, and cannabis, and that it was alleged that he also abused his prescription medications. The circuit court pointed out that Tesar testified that he had been sober since May 2024, except for the use of cannabis. He attended substance abuse counseling between July 2024 and January 2025 and testified that he no longer needed counseling due to his religious faith. Tesar had been attending Narcotics Anonymous weekly and had a sponsor.

¶ 38   Regarding whether a restriction on parenting time was appropriate, the circuit court's order noted that Tesar's mother, who was the court-appointed parenting time supervisor, testified that Tesar used to abuse drugs. However, she believed that this was no longer the case as she had observed a difference in Tesar's behavior since he had been sober. She testified that, due to his behavior change, she no longer saw the need for continued supervision of his parenting time. The circuit court indicated that it found her testimony credible.

¶ 39   The circuit court also indicated that Tesar "had a long-standing romantic interest in Petitioner's older daughter. There was no evidence that he ever acted on this interest other than appearing at her place of employment while intoxicated and asking her to read a letter he wrote about his attraction to her[.]" The circuit court noted that this incident occurred after she had become an adult and that Tesar acknowledged that his actions were inappropriate. Rhodes testified that she had major concerns regarding Tesar's parenting time due to this letter and feared that he would act inappropriately towards E.R.T. The circuit court stated, "This is understandable, but

9

based on the facts presented, the Court does not find that Respondent poses a danger to E.R.T." The circuit court concluded that Rhodes was to have a majority of parenting time and awarded Tesar unsupervised parenting time every other weekend from 5 p.m. on Friday to 5 p.m. on Sunday. On March 31, 2025, Rhodes filed a notice of appeal.

¶ 40                                        II. ANALYSIS

¶ 41    On appeal, Rhodes argues that the circuit court should have placed restrictions on Tesar's parenting time pursuant to section 603.10 of the Marriage Act (750 ILCS 5/603.10 (West 2022)). She maintains that the evidence presented at the hearing reveals that Tesar's conduct seriously endangers his child. She requests that Tesar undergo drug testing once a week or wear a bracelet that monitors drug use while exercising parenting time. She requests that he attend a treatment program for drug abuse and that this matter be remanded to the circuit court to consider that request. She further seeks a reversal of "the trial court's order of allocation."

¶ 42    In response, Tesar argues that the circuit court properly awarded unsupervised parenting time. He points out that the circuit court was not presented with any evidence sufficient to trigger a restriction under section 603.10. He argues that the circuit court correctly considered some of the best interest factors and that the circuit court's findings were "entirely consistent with applicable law."

¶ 43                              A. Restriction of Parenting Time

¶ 44    The legislature prescribes two different statutes concerning the restriction of parenting time. First, section 602.7 of the Marriage Act governs the allocation of parenting time and mandates that such allocation be determined "according to the child's best interests." *Id.* § 602.7(a). Subsection 602.7(b) delineates 17 factors that the trial court must consider when determining the child's best interests for the purpose of allocating parenting time, including whether restrictions on parenting time are warranted. *Id.* § 602.7(b)(1)-(17). In contrast, section

603.10 pertains to restrictions on parenting time. "A restriction on parenting time is a limitation or condition placed on parenting time once parenting time has been allocated." *In re Marriage of Hipes*, 2023 IL App (1st) 230953, ¶ 36. "Restricting parenting time requires a showing, by a preponderance of the evidence, that a parent engaged in conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development." *Id.*; 750 ILCS 5/603.10(a) (West 2022) (a court may not restrict parenting time unless it makes a finding of serious endangerment). This "serious endangerment standard is different from, and more stringent than, the best-interest standard." *In re Marriage of Hipes*, 2023 IL App (1st) 230953, ¶ 37.

¶ 45 Rhodes asserts that the evidence presented during the hearing on March 13, 2025, substantiates her claim that restrictions should have been imposed on Tesar's parenting time pursuant to section 603.10 and contends that the circuit court erred in its failure to do so. We disagree, as the circuit court was never informed that Rhodes was requesting a restriction pursuant to section 603.10.

¶ 46 First, Rhodes did not raise the argument of serious endangerment pursuant to section 603.10 in the lower court, through a motion, pretrial pleading, or opening statement. In fact, the sole reference she makes to Tesar's conduct appears in her initial pleading, where she provides a vague statement that Tesar exhibited "strange and threatening behavior" without further elaboration, explanation, or details. On March 5, 2025, she submitted a "pretrial submission," within which, under the heading "contested issue," she simply stated, "There is only one issue to be tried: allocation of parenting time." She made no mention of requesting a restriction pursuant to section 603.10. Conversely, Tesar filed a counterpetition on June 6, 2024, requesting parenting time, and subsequently submitted a statement of issues on February 26, 2025, seeking the removal of the supervision requirement from his parenting time. Tesar's February 26, 2025, pleading

11

informed Rhodes that he was requesting unsupervised parenting time, to which Rhodes responded by submitting her "pretrial submission," without making any request of restricting Tesar's parenting time. Furthermore, on the day of the hearing, prior to the commencement of evidence, the circuit court inquired of Rhodes concerning her preferences regarding parenting time. Her reply was only, "[W]e'd like your temporary order become the permanent order of the Court." She did not elaborate nor request that Tesar's parenting time be restricted pursuant to section 603.10, nor did she argue that Tesar posed a serious endangerment to E.R.T.

¶ 47　Second, the temporary order, which Rhodes requested to be made permanent, indicated that Tesar's parenting time was to be supervised. However, the order did not specify that such supervision constituted a restriction pursuant to section 603.10, nor did it mention the finding of serious endangerment. Furthermore, section 603.10 mandates that specific language be included in an order if parenting time is to be restricted. Specifically, an order granting parenting time must incorporate the following language if such restrictions are to be imposed:

> "If a person granted parenting time or visitation under this order uses that time to facilitate contact between the child and a parent whose parenting time is restricted, or if such a person violates any restrictions placed on parenting time or visitation by the court, the parenting time or visitation granted under this order shall be revoked until further order of court." 750 ILCS 5/603.10(d) (West 2022).

¶ 48　This statement is notably absent from the written order delineating Tesar's temporary parenting time. The serious-endangerment standard of section 603.10 "has been described as an 'onerous, stringent, and rigorous' burden to meet." *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 56 (quoting *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 429 (1991)). The reason for this is because " 'liberal visitation [(parenting time)] is the rule and restricted visitation [(parenting time)] is the exception.' " *Id.* (quoting *Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 957

(1993)). Absent a specific reference to section 603.10 or an explicit mention of serious endangerment, we will not infer its application within the written temporary order as the basis for supervised parenting time. Consequently, since the temporary order establishing supervised parenting time was not based on section 603.10, Rhodes's verbal expression in court of her wish for it to be formalized into a permanent order did not constitute a request to restrict Tesar's parenting time under said section.

¶ 49 Rhodes did not request in any pleading or responsive pleading that Tesar's parenting time should be restricted pursuant to section 603.10 because he posed a serious endangerment to E.R.T. Further, she failed to bring this issue to the circuit court's attention at the beginning of the hearing when provided a chance to do so. In other words, despite having multiple opportunities to request a restriction pursuant to section 603.10 to the circuit court, Rhodes did not do so. In fact, this appeal marks the first instance in which she has sought to restrict Tesar's parenting time pursuant to section 603.10. "Generally, arguments not raised in the circuit court are forfeited and cannot be raised for the first time on appeal." *Gunnison Commons, LLC v. Alvarez*, 2024 IL App (1st) 232176, ¶ 23. Consequently, since Rhodes at no time asserted the application of section 603.10 in the circuit court, her argument on appeal is forfeited and will not be considered.

¶ 50                    B. Allocation of Parenting Time

¶ 51 Tesar was granted unsupervised parenting time every other weekend. On appeal, Rhodes addresses this allocation only in her conclusion, with a single sentence stating, "This Court should reverse the trial court's order of allocation." Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) defines and explains the requirements for a brief. One such requirement is that an argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Rhodes failed to provide us with any argument or authority supporting her one-sentence conclusion that we reverse

the allocation of parenting time. "A court of review is entitled to have the issues clearly defined and to be cited to pertinent authority. [Citation.] The appellate court is not a depository in which the appellant may drop the burden of argument and research. [Citation.] Arguments which do not satisfy the requirements of Supreme Court Rule 341(e)(7) do not merit consideration on appeal." *In re Marriage of Winton*, 216 Ill. App. 3d 1084, 1090 (1991). Rhodes's argument section regarding this issue is nonexistent and in violation of Rule 341, and "we decline to engage in any analysis absent a properly raised argument by appellant" (*LMP Services, Inc. v. City of Chicago*, 2017 IL App (1st) 163390, ¶ 53). In light of Rhodes's failure to properly raise the issue regarding allocation of parenting time, we hold that such issue has been forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 52                                            III. CONCLUSION

¶ 53    For the foregoing reasons, we affirm the judgment of the Jackson County circuit court.


¶ 54    Affirmed.