**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250102-U

Order filed July 25, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| ANDREA T., | ) | Du Page County, Illinois, |
| | ) | |
|     Petitioner-Appellee, | ) | Appeal No. 3-25-0102 |
| | ) | Circuit Nos.   15-D-1008 |
|     and | ) |            17-OP-93 |
| | ) | |
| JON T., | ) | Honorable |
| | ) | Maureen R. Riordan, |
|     Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Hettel and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The court did not abuse its discretion in restricting father's parenting time. The court's order allocating sole decision-making authority to mother regarding the children's religious instruction was against the manifest weight of the evidence. The court did not abuse its discretion in allocating the guardian *ad litem* and custodial evaluation fees.

¶ 2    Respondent, Jon T., appeals the Du Page County circuit court's order (1) restricting his parenting time, (2) allocating sole decision-making authority regarding the children's religious instruction to petitioner, Andrea T., (3) granting Andrea's motion for reallocation of guardian *ad*

*litem* fees, and (4) denying his motion for reallocation of custody evaluator fees. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        Jon and Andrea were married in 2011. They had two children together, V.T., born in 2012 and G.T., born in 2014. Andrea filed for dissolution in 2015. In September 2016 the parties entered a parenting agreement and allocation judgment prepared by the guardian *ad litem* (GAL), Lynn Mirabella, which was later incorporated into the marital settlement agreement and incorporated into the judgment of dissolution entered in November 2016. The agreement provided that the parties would be required to consult and discuss significant issues regarding education, health, religion, and extracurricular activities prior to decisions being made. Additionally, the agreement provided that "the children shall be raised and reared in the Catholic faith and attend religious education and timely obtain sacraments in that faith." In the event the parties disagreed on an issue, the agreement provided that "ANDREA shall have the authority to make a final decision."

¶ 5        Following entry of the dissolution, there was a myriad of filings by the parties. In March 2020 a GAL was again appointed, and ultimately Lynn Mirabella served as the GAL. On November 16, 2021, Andrea filed a petition to modify the allocation judgment and restrict Jon's parenting time. The petition alleged that Jon acted in a manner that seriously endangered the children's mental, moral, and/or physical health, or significantly impaired their emotional development. It also alleged a substantial change in circumstances had occurred. Andrea alleged that V.T. had been diagnosed with learning and behavioral disorders and had been prescribed medication to help with those issues. She further alleged that although she administered the prescribed medicine during her parenting time, Jon refused to do so during his parenting time.

2

Without the medication, V.T. suffers physical, mental and emotional pain. Andrea also alleged that Jon refused to comply with V.T.'s therapeutic treatments or cooperate with his therapist and doctors. She further alleged that Jon demeans and disparages her to the children. The petition requested that Jon's parenting time be modified and restricted consistent with the children's best interests, that his time be limited to daytime hours, that he be ordered to participate in counseling to address treatment of the children and for other relief. Jon filed an emergency petition to modify and supervise and restrict Andrea's parenting time on November 22, 2021. Following the filing of these petitions, the court appointed Dr. Robert Shapiro to conduct an evaluation pursuant to section 604.10(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/604.10(b) (West 2022)).

¶ 6        The petitions proceeded to trial on October 23, 2024, and continued for several days over the course of several months. The GAL testified as to her recommendations and the bases therefore. Her report, which included her recommendations, was admitted into evidence. The GAL recommended, among other things, that (1) Andrea be given sole decision-making responsibility for the children, including for religious instruction; (2) Jon's parenting time be suspended for at least 90 days, during which time Jon would receive counseling twice per week; and (3) the children have no access to guns or hunting and neither parent should take the children to a place where guns are fired or allow another family member to utilize a gun in the presence of the children.

¶ 7        The GAL provided lengthy testimony regarding her investigation, including the information she learned from interviews with the children's therapists, treatment providers, the Department of Children and Family Services (DCFS), the children, Jon, and Andrea. Her testimony revealed that numerous DCFS complaints had been made against Andrea, all of which

3

were unfounded. Jon called the police multiple times to make complaints of parental interference when Andrea was late, even mere minutes late, when exchanging the children. Several individuals concluded that the children had been coached by Jon to make certain statements. For example, V.T. reported being beaten black and blue by Andrea. When asked how he knew that, he stated that Jon told him and showed him pictures. Jon was not cooperative in administering V.T.'s medication or in obtaining that medication from Andrea. Jon was not supportive of the children's therapy and had been banned from at least one provider's office. V.T. told one provider that Jon obtained a Carolina Reaper pepper and gave it to V.T. to put in Andrea's underwear. G.T. told a provider that Jon gave him an exploding cigarette for G.T. to give to Andrea.

¶ 8    As to the recommendation regarding guns, the GAL testified that V.T. was very immature and had major impulsivity issues. She further testified that V.T. was physically aggressive towards other children and had stabbed a teacher in the arm with a pencil. V.T. was defiant, disrespectful of authority, aggressive and lacked empathy. The GAL believed that given V.T.'s emotional and mental challenges, especially the impulsivity issues, it was dangerous for V.T. to be around guns. She also noted that V.T. had self-loathing issues, where he stated that he should die and should kill himself. V.T. thought about ways to kill himself. The GAL believed these statements and thoughts provided additional reasons why V.T. should not be allowed access to guns for his own safety. There was also an incident where V.T. reported to his therapist that Jon had lost a shotgun in his house and V.T. helped look for it. Specifically, the GAL testified that she had a conference with Maggie Perron on August 21, 2024. During that conference, the GAL learned that V.T. had reported to Maggie that Jon told V.T. that he lost a shotgun in the house, V.T. helped Jon look for it, and that they could not find it. V.T. knew Jon

could get in trouble if Jon had the gun and that is why they were looking for it. Regarding G.T., she testified that he did not like guns.

¶ 9          In regard to the recommendation that Jon's parenting time be suspended, the GAL agreed that part of the reason she made the recommendation was so that Jon could do some soul searching and to make Jon accountable for his actions. She also stated during her deposition that use of the term soul searching was a poor choice. Jon always blamed everybody else for anything that went wrong and failed to realize that he was responsible for a lot of the problems. The GAL hoped over the 90 days, with the help of a counselor, "positives could be achieved and it would be better off for the boys in the long run." The GAL stated that the biggest reason for the suspension was that she believed the children had been emotionally harmed by the conflict between Jon and Andrea, and "particularly the situations that Jon has put them in and the things that they tend to repeat to their therapist and -- that is, some of the alienating language that has been portrayed." The GAL hoped that the suspension would benefit the children. She further explained that the positives outweigh the negatives because of the alienation present in this matter. The way to treat alienation is to keep the children away from the alienating parent and allow the children to reestablish the bond with the non-alienating parent. The suspension would give the children a chance at normalcy, not to be used as agents against Andrea, not to parrot negative dialogue against Andrea and to have a chance to be children without being in the middle of the conflict that had been in their lives since 2015. The GAL stated that she had testified in detail about Jon's alienating and manipulating behaviors and the period of suspension would help remove that refrain from the children's brains. The GAL chose 90 days as her recommendation because of her involvement in the case and her experience working with

5

therapists. She stated that it usually takes approximately three months for a patient and therapist to build rapport, get up to speed, and start working on matters of significance.

¶ 10    As to decision-making responsibilities regarding religious instruction, the GAL testified that although the allocation agreement gave Andrea authority to make a final decision, in the event she and Jon disagreed as to education, health, and extracurricular activities, Jon had authority for final decision-making as to religious instruction. She noted that the agreement was not clear, but the intent was to have Jon have final decision-making authority as to religious instruction, with the children being raised Catholic and receiving the sacraments.

¶ 11    The GAL testified that Andrea told her there had been issues with the scheduling of the children's religious instruction. Jon scheduled the religious classes on Wednesday evenings, which was during Andrea's parenting time. There were other options for the religious classes, including Sunday mornings and remote learning. Andrea was already taking the boys to therapy during her parenting time and felt that Jon was essentially trying to cut her parenting time on Wednesday by having the boys attend religious classes on that day. Jon filed petitions for rule to show cause regarding Andrea's failure to have the children attend religious education. The GAL testified as to one of the petitions, that she felt Jon set up the religious instruction to be inconvenient to Andrea in an attempt to capitalize on a "gotcha" moment if the children missed the religious education when they were with Andrea.

¶ 12    The GAL acknowledged that Andrea sent an email to Jon in 2020 indicating that a line needed to be drawn regarding the children's mental and emotional well-being. Andrea's email stated that education was not optional, but religious classes were. Andrea questioned the justification for forcing the children to attend religious classes that they did not want to attend and forcing them into a religion they did not choose. The GAL testified that as of 2021, Andrea

6

did not have any issue with Jon taking the children for religious education, but she did have an issue as to when they would go. Andrea wanted religious education to take place during Jon's parenting time.

¶ 13　　The GAL was asked if she would be opposed to Jon being in charge of religious education if he arranged for the events, classes, and sacraments to occur during his time with the children. The GAL stated "[t]hat's tough" because the children had indicated to her recently that they were not going to church regularly with Jon during his parenting time, so she believed that religion was no longer important to Jon. She stated that "because of the conflict in all areas of communication between these people, I think, to keep it simple and to keep it less conflictual between them, I thought it made sense that she be awarded the sole decisionmaking authority in all four of the areas." The GAL's testimony in response to questioning indicated that if Andrea did not have sole decision-making as to religion, Jon may "use that opportunity to interfere with or interject disputes on other issues" because it had happened in the past. The GAL further testified that she believed Jon should still be able to take the children to Catholic church and educate them in the Catholic religion. However, she acknowledged that if Andrea had sole decision-making authority for religion, she could enroll the children at her Christian church.

¶ 14　　Dr. Shapiro then testified. His report and updated report were admitted into evidence. It was his understanding from Jon that Jon supervised the children when they used guns and that he taught them about gun safety. Dr. Shapiro did not have any confirmation of Jon's statements in this regard, but he did not doubt it due to Jon's military experience and having been around guns most of his life. He testified that G.T. indicated he did not like guns. Dr. Shapiro stated that he had no information that would lead him to believe that V.T. was in danger when using guns with Jon. However, if V.T. was unmedicated, Dr. Shapiro "would not like to see him around a

7

weapon." If V.T. was medicated and under the supervision of an adult, Dr. Shapiro would have no concerns about V.T. using a gun. Dr. Shapiro would be concerned if Jon misplaced a gun in his home and had V.T. look for it because that would mean the gun was not in a safe as it should be. He believed that if Jon was not authorized to possess a gun or if he had to surrender his FOID card or guns, then Jon should not be allowed to have guns around the children. If V.T. was medicated and still having suicidal ideation, then Dr. Shapiro believed he should be kept away from guns.

¶ 15    Dr. Shapiro indicated that Jon was reluctant to medicate V.T. He stated that Jon and V.T. have conversations about how to get V.T. off the medication. V.T. indicated to Dr. Shapiro that Jon did not want him on medication. V.T. also said that he does not want to be on medication, even though he is less angry and in better control when he is on the medication. As a result of Jon's behavior, Dr. Shapiro observed V.T. being resistant to medication and counseling.

¶ 16    Dr. Shapiro, in his updated report, recommended that the court seriously consider supervising Jon's parenting time and that Jon should attend parenting coaching/therapy. Dr. Shapiro noted he had significant concerns about vindictive actions by Jon, including the multiple DCFS calls, police calls, Jon's indication that he wanted to see Andrea taken away in handcuffs, the reports by the children regarding the Carolina Reaper pepper and exploding cigarette, and allegations that Jon damaged the GAL's vehicle in the courthouse parking lot. Dr. Shapiro noted that the children would be disappointed if the court chose supervised visitation, but if Jon's behavior changed, their lives would be enriched. Dr. Shapiro was aware of the GAL's recommendations that Jon's parenting time be suspended for 90 days, that he engage in counseling, and that at the end of the 90 days, he would have supervised visits for two weeks. Dr. Shapiro testified that these recommendations by the GAL were appropriate.

¶ 17        Both Jon and Andrea testified. The court heard closing arguments from the parties and the GAL. The court found that the GAL was credible and that she was one of the most experienced GALs in the county. The court also found Dr. Shapiro credible and that his evaluation process was thorough. It determined that both Andrea and Jon "had credibility issues, and both were impeached on a few occasions." The court stated that Jon's testimony "was often performative and disingenuous, and the court specifically does not find his testimony to be credible." The court noted that this matter may be the highest conflict case the court had overseen. The court found that V.T. had serious mental health issues, including aggression and past suicidal ideations.

¶ 18        In considering the statutory factors regarding parenting time and allocation of decision-making, the court made the following findings. The court found that it was clear V.T. needs to be on medication and counseling on a continuous basis and that G.T. needs counseling as well. The court determined that the children needed both parents to support the recommendations of the professionals rendering advice, rather than undercutting them. The court noted various behaviors by Jon—referring to Andrea as a bully, encouraging the children to run away or call the police, calling the police for the slightest transgression and telling the children Andrea abuses them— did not serve the best interests of the children. The court found that it was "clear that Jon's attempts to turn the children against their mother have seriously endangered the children's mental and emotional health. Indeed, his refusal to put the needs of the children, specifically V, above his own, may well have put the physical health of the children in jeopardy as well." After noting the various issues of Jon not cooperating with giving V.T. medication, the court questioned whether, at that time, Jon was appropriately administering the medication and determined that Jon's refusal to follow medical advice "has been unquestionably detrimental to

9

V's health." The court noted the testimony regarding V.T.'s physical abuse of G.T. which, the court concluded, went far beyond normal sibling behavior. Citing Jon's disparagement of Andrea to the children, Jon's sentiment that Andrea should be handcuffed and go to jail in front of the children, and the reports by the children regarding the Carolina Reaper pepper and the exploding cigarette, the court determined that it was "quite clear that Jon is absolutely unwilling and, at this time, unable to facilitate a close and continuing relationship between the boys and Andrea." The court noted the GAL's testimony that a DCFS supervisor said this was the worst case of mental abuse she had ever seen. The DCFS supervisor also stated that the children were Jon's puppets, were clearly coached, and were impacted by being told they were not safe with Andrea. The court found that Jon engaged in a pattern of mental and emotional abuse against the children in order to turn them against Andrea. The court also found that Jon was emotionally abusive towards Andrea.

¶ 19        The court ordered that Andrea had sole decision-making authority for medical, education, religious instruction and extracurricular activities. The court further ordered that Jon's parenting time would be suspended for 90 days, during which he was required to receive counseling at least two times per week. Additionally, the court ordered that the children could not have access to any weapons, guns, or hunting and that no parent should take the children to a place where guns are fired or allow another person to utilize a gun in the presence of the children.

¶ 20        The court's order also resolved motions from Andrea and Jon, which sought to reallocate the GAL's fees and the costs of the section 604.10(b) custody evaluation. Andrea's motion sought to reallocate the GAL's fees from a 50/50 split to Jon paying all of the fees. Andrea argued that her assets were limited and Jon had significant assets. Additionally, Andrea argued that it was Jon's behavior that caused many of the GAL fees. Jon's motion sought to reallocate

the 604.10(b) custody evaluation costs, such that Andrea would pay more than 25% of the costs she was currently ordered to pay. Jon argued that Andrea had sufficient income and assets to contribute more than 25% of the costs. The court granted Andrea's motion to reallocate, in part, and ordered reallocation from an equal split of the fees to a 25/75 split, such that Andrea was responsible for 25% of the GAL fees and Jon was responsible for 75%. The court entered judgment against Andrea for $10,217.96 and against Jon for $30,653.87 for the GAL fees. The court denied Jon's motion to reallocate the section 604.10 (b) custody evaluation costs, such that Jon remained responsible for 75% of the costs and Andrea for 25%. Jon appeals.

¶ 21                                    II. ANALYSIS

¶ 22        Jon first argues that the court erred by placing restrictions on his parental rights. Specifically, he argues that the court erred by suspending his parenting time for 90 days and restricting his right to utilize firearms with, or in the presence of, the children during his parenting time.

¶ 23        "After a hearing, if the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development, the court shall enter orders as necessary to protect the child." 750 ILCS 5/603.10(a) (West 2020). Among other restrictions, the court may adjust or eliminate a parent's decision-making responsibilities or parenting time or both. *Id.* § 603.10(a)(1). The circuit court's determination that certain restrictions are necessary is reviewed for an abuse of discretion. *In re Marriage of Hipes and Lozano*, 2023 IL App (1st) 230953, ¶ 54. "A court abuses its discretion when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Id.*

11

¶ 24    Jon initially argues that the gun restriction is void because the court did not have jurisdiction to impose the restriction because Andrea did not request that specific restriction in her pleadings. This argument fails. Although Andrea's petition did not specifically request a restriction regarding guns, it requested that the court modify and restrict Jon's parenting time consistent with the best interests of the children. Thus, there was a proper pleading pending before the court seeking the general relief provided, a restriction on Jon's parenting time, unlike the cases cited by Jon where the pleadings at issue did not seek, even generally, the relief provided by the court. See *Suriano v. Lafeber*, 386 Ill. App. 3d 490, 493 (2008) (where the circuit court improperly *sua sponte* terminated a parenting agreement despite the only pending pleading being a petition for rule to show cause); see also *In re Custody of Ayala*, 344 Ill. App. 3d 574, 584-86 (2003). Additionally, this issue was litigated during the trial with Jon having the opportunity to question witnesses and present his own testimony regarding the children's use of guns. He further had the opportunity to cross-examine the GAL regarding her recommendation as to the gun restriction and the basis therefore. Based on the foregoing, we conclude the court had jurisdiction to order the gun restriction.

¶ 25    Turning to the merits, Jon essentially argues that the evidence at trial failed to establish that his conduct in relation to gun usage with and/or around the children seriously endangered the children. He argues that, although the court found he endangered the children for other unrelated issues, it did not make that finding regarding the children's use of or proximity to firearms. This argument ignores the court's findings regarding Jon's failure to properly medicate V.T. or support his therapy. There was substantial testimony and evidence that V.T. had significant mental health issues, including impulsivity, aggression and suicidal ideation. His issues were significant enough that the GAL did not even believe he should be around nerf guns,

12

let alone real weapons. G.T. also had some behavioral issues and did not like being around guns. Further, the court found that Jon failed to put V.T.'s needs above his own, which may have actually physically harmed V.T. It is clear this finding was at least in part related to Jon's failure to properly medicate V.T. The court further questioned whether Jon was currently properly medicating V.T. and notably, Dr. Shapiro agreed that V.T. should not be using weapons if he was not properly medicated. Although Jon points to Dr. Shapiro's testimony that Jon supervised the children when utilizing guns and was teaching them proper safety in support of his argument that the restriction is improper, Dr. Shapiro also testified that his belief in this regard was based upon Jon's representations to him. Notably, the court found that Jon was not credible, such that the court may not have believed Jon was properly supervising the children when using guns. Such belief could be supported by the representation by V.T. to his therapist that Jon had lost a gun in his home and V.T. helped search for the gun with him. Dr. Shapiro was concerned with this incident, as he indicated it would mean that the guns were not being properly secured. Although Jon denied this incident in his testimony, the court made clear that Jon lacked credibility. Based upon all of this evidence, we cannot say that the court abused its discretion in putting a restriction on the children's use of or proximity to guns.

¶ 26        In regards to the suspension of Jon's parenting time for 90 days, he argues that there was more appropriate relief available and that the suspension was extreme, especially considering the court's finding that both the GAL and Dr. Shapiro testified that the children might be devastated if they could not see Jon. However, just because there were alternative restrictions available does not mean that the restriction imposed by the court was an abuse of discretion. The court had ample evidence in front of it to conclude that Jon's behavior, including his consistent disparagement of Andrea to the children, was detrimental to the children. Additionally, as the

13

GAL explained, the 90-day period was to give time for Jon to make progress in therapy and to give the children time to re-establish bonds with Andrea without any interference from Jon. Dr. Shapiro also agreed with the 90-day suspension. In light of the evidence, the recommendation by the GAL and the agreement of Dr. Shapiro, we cannot say that the court abused its discretion by suspending Jon's parenting time for 90 days.

¶ 27 Jon next argues that the court erred by modifying the parties' agreement to raise the children in the Catholic faith. Initially, we note that the court did not outright modify the agreement to raise the children in the Catholic faith, but instead, reallocated final decision-making regarding the children's religion to Andrea which would, on its face, allow Andrea to change the children's religion. As with the gun restriction issue, Jon argues that the court's order in this regard is void due to Andrea not specifically seeking the reallocation of final decision-making regarding religion or a change in the parties' parenting agreement regarding religion in a pleading. We find this argument fails, just as it failed in regards to the gun restriction as set forth in paragraph 24 *supra*.

¶ 28 "A reviewing court will not disturb a circuit court's ruling on the allocation of decision-making responsibilities unless that decision is against the manifest weight of the evidence." *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 47. "A decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on evidence." *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 51. The law does not provide "that agreements of parties with respect to the religious training of children should be enforced in all situations, but in the absence of clearly established circumstances indicating that the best interests of the child would be served by

14

modification *** solemn agreements incorporated in a decree and sanctioned by the court should [not] be *** lightly cast aside." *Gottlieb v. Gottlieb*, 31 Ill. App. 2d 120, 137 (1961).

¶ 29 Here, although we understand the court's desire to have decision-making authority rest solely with Andrea due to Jon's behavior and the conflict between the two, there was no evidence presented that it would be in the children's best interest to modify the parenting agreement to give Andrea the authority to change the children's religion. As such, the parties' agreement to raise the children in the Catholic faith should not have been cast aside so lightly. See *id.* And while the court's allocation of authority to Andrea does not outright change the religion the children will be raised in, it certainly allows for the possibility of Andrea enrolling the children in a different, non-Catholic, church, as the GAL recognized, or foregoing religious education altogether. Thus, it was against the manifest weight of the evidence to provide Andrea sole decision-making authority over religion without providing that the children must still be raised in the Catholic religion as agreed upon by the parties. There are various options the court could utilize to reduce the conflict between the parties and still ensure the parties' agreement regarding the children's religion is carried out. Some examples are giving Andrea sole decision-making as to scheduling the children's catholic education or to allow Jon sole responsibility for the scheduling but with a restriction that it must be during his parenting time or that he must be responsible for all transportation to and from any religious training such that he could not utilize his responsibility to interfere with Andrea's parenting time. These are but a few examples, and the circuit court is instructed to fashion its allocation of decision-making authority as to religion with the intent to ensure the parties' agreement to raise the children in the Catholic religion is fulfilled. This is not to say that the agreement could never be changed, but as it stands now, there simply is no evidence to say it is in the children's best interest to give one parent authority to

15

change the children's religion. Based on the foregoing, we reverse the circuit court's order allocating sole decision-making authority regarding religion to Andrea, without any restriction requiring adherence to the parenting agreement's provision that the children should be raised Catholic. We remand for entry of an order consistent herewith.

¶ 30    Lastly, Jon argues that the court erred by granting Andrea's motion to reallocate the GAL fees and denying his motion to reallocate the section 604.10(b) custody evaluation fees. The allocation of both types of fees are reviewed for an abuse of discretion. See *In re Estate of K.E.S.*, 347 Ill. App. 3d 452, 468 (2004) ("Determination of who must pay GAL fees rests within the discretion of the trial court."); *In re Custody of McCuan*, 176 Ill. App. 3d 421, 428 (1988) (providing that allocations of GAL fees and a psychologist's fees were reviewed for an abuse of discretion). In relation to both motions, Jon essentially argues that because the parties' financial affidavits indicated that their shares of their combined gross income were 63% Jon and 37% Andrea, the court abused its discretion by not allocating the fees according to those percentages. However, he fails to cite to any law supporting his argument that the fees must be allocated exactly according to each party's respective share of their combined gross income. Arguments that are not supported by citation to legal authority are forfeited and thus, we need not consider this argument. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing that argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and that "[p]oints not argued are forfeited"). Additionally, we note that it is clear that Jon's behavior necessitated much of the involvement of the GAL and Dr. Shapiro. See *e.g.*, *Gibson v. Barton*, 118 Ill. App. 3d 576, 583 (1983) (stating that "the party necessitating the guardian's appointment should bear the greater part if not all of the expenses"). Based on the foregoing, we affirm the court's allocation of the GAL fees and Dr. Shapiro's fees.

16

¶ 31                                     III. CONCLUSION

¶ 32        The judgment of the circuit court of Du Page County is affirmed in part, reversed in part, and remanded for further proceedings.

¶ 33        Affirmed in part and reversed in part.
            Cause remanded.