*In re* E.I. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee v. M.I., Respondent-Appellant).

Second District   Nos. 2—99—0252 through 2—99—0254 cons.

Opinion filed December 27, 1999.

Kelli M. Smith, of Day & Robert, P.C., of Naperville, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Brandon Cue, of Ottosen, Trevarthen, Britz, Dooley & Kelly, Ltd., of Wheaton, for the People.

JUSTICE GEIGER delivered the opinion of the court:

The respondent, M.I., appeals from the December 4, 1998, order of the circuit court of Du Page County changing the permanency goal for her three minor children, E.I., A.I., and R.I. Specifically, the permanency goal was changed from "return home" to subsidized guardianship with the children's maternal grandmother. On appeal, the respondent argues that (1) the trial court's decision to change the permanency goal was against the manifest weight of the evidence and resulted in manifest injustice; and (2) the trial court abused its discretion in limiting the length of the permanency hearing to one hour. We affirm.

The record reveals the following relevant facts. The respondent is the mother of three minor children, E.I. (age 13), A.I. (age 10), and R.I. (age 8). On March 8, 1995, the State filed a petition alleging that the minor children were neglected for lack of support, education, and other care necessary for their well-being, including adequate food, clothing, and shelter. The respondent was alleged to have left her children unsupervised at home and in the car for long periods of time. The children were alleged to have been dirty, unkempt, and improperly fed. On March 9, 1995, following a shelter care hearing, the children were placed in the temporary custody and guardianship of the Department of Children and Family Services (DCFS). At this time, the children were temporarily placed with Margaret Reaves, the children's maternal grandmother.

On November 20, 1995, following a hearing on the neglect petition, the trial court adjudicated the children neglected and made them wards of the court. That same day, the trial court entered a dispositional order placing the children in the care and custody of Reaves. The respondent was allowed supervised visitation.

On October 25, 1996, DCFS formulated a client service plan for the respondent. As part of the plan, DCFS established a permanency goal that the children eventually would be returned home to live with the respondent. During a subsequent administrative review on April 25, 1997, DCFS again determined that "return home" was the appropriate permanency goal. At a permanency hearing on May 27, 1997, the trial court adopted DCFS's recommendations.

On December 4, 1997, DCFS completed another administrative case review and concluded that the permanency goal should be changed from "return home" to subsidized guardianship with Reaves. The DCFS caseworker reported that the respondent had failed to make reasonable progress on her service plan tasks, particularly her attendance at counseling. On December 9, 1997, the respondent objected to the permanency goal change and the matter was subsequently scheduled for a permanency hearing.

On March 10, 1998, the trial court held a permanency hearing to consider DCFS's recommended change in the permanency goal. On March 24, 1998, the trial court entered a written order rejecting the recommended change and finding that the permanency goal should remain "return home." In so ruling, the trial court found that the respondent had made progress towards the goal of "return home" and that there was insufficient evidence to change the permanency goal. The trial court further ordered DCFS to develop and implement a new service plan that would provide the respondent with adequate individual counseling.

On April 11, 1998, DCFS implemented a new service plan according to the trial court's directive. The permanency goal contained in the service plan was that the minor children would be returned to the respondent in five months.

On October 28, 1998, DCFS conducted another administrative case review. At this time, the permanency goal was again changed from "return home" to subsidized guardianship. Once again, the respondent objected to the change in the permanency goal. On November 17, 1998, the trial court scheduled a permanency hearing for December 4, 1998. The trial court ordered that the hearing would be limited to one hour in duration.

On December 4, 1998, the trial court conducted a permanency hearing. The State called one witness at the hearing, Teresa Spears, who was a caseworker with Central Baptist Family Service. Spears testified that she was the caseworker assigned to the respondent's case. Spears testified that, during the four years that the case has been opened, the respondent had not sufficiently complied with the requirements of her service plan. Specifically, the respondent had not completed the "most important" service plan task, family counseling. The respondent failed to consistently attend counseling and regularly missed appointments. Spears explained that the respondent would only get "serious about [counseling] when we're coming to court, and [there is a] possibility of the goal being changed." Spears testified that family counseling was especially important given the fact that the children continued to express concerns of abandonment and neglect, as well as difficulty communicating with their mother.

The court file also contains written reports authored by two of the respondent's previous therapists, Bessie Smith and John McPherrin. These reports documented that the respondent was making some progress when she attended counseling sessions. However, these therapists indicated that the respondent's progress had been hindered by her sporadic attendance.

On cross-examination, Spears acknowledged that, during the administrative case review conducted by DCFS on October 28, 1998, the respondent was evaluated as having achieved satisfactory progress in accomplishing the goals of her service plan. Among the tasks that the respondent was found to have satisfactorily completed were the following: (1) demonstrating the parenting skills that she learned in class; (2) setting appropriate boundaries for the children while they were in her care; (3) never leaving the minors unattended; (4) keeping suitable housing for herself; (5) continuing to reside in the same residence; (6) contacting caseworkers at least two times a month; and (7) allowing the caseworker to make periodic unannounced home visits.

The only tasks on which the respondent was evaluated as unsatisfactory were attending and cooperating with counseling as arranged by the caseworker and paying her utility bills on time.

The respondent testified on her own behalf. The respondent testified that she had been engaged in individual therapy since March 1998 and that she was currently meeting with Charley Knapp. The respondent acknowledged that she had not regularly attended therapy. However, the respondent attributed some of this failure to her difficulty in contacting the therapist to schedule appointments. The respondent testified that she was ready to have her children returned to her and that the most important thing in her life was her children.

The respondent introduced the written report of Charley Knapp. In his report, Knapp indicated that he had met with the respondent and her children on three different occasions prior to the hearing. Knapp indicated that the respondent had made significant progress in her therapy and would be able to care for her children. Knapp also recommended that the respondent be given custody of her daughters as soon as possible.

The State had two other witnesses present at the hearing to testify on its behalf. However, because of the one-hour limit imposed by the trial court, the State did not have time to call these witnesses. The record also reveals that, on at least one occasion, the trial court interrupted the respondent's cross-examination of Spears to remind counsel that the hearing had to be completed within one hour.

At the close of the hearing, both the State and the children's guardian *ad litem* (GAL) argued in support of DCFS's recommendation to change the permanency goal to subsidized guardianship with Reaves. The GAL argued that, in the preceding six months, the respondent had done the bare minimum to comply with the service plan. The GAL argued that the children did not feel safe with the respondent and that the respondent could not consistently provide the children with a safe home as could Reaves.

The trial court subsequently found that there was sufficient evidence to support a change in permanency goal to subsidized guardianship with Reaves. Although the trial court acknowledged that the hearing had been abbreviated, it nonetheless believed that it had an adequate understanding of the facts of the case based upon the evidence elicited during the hearing and its review of the court file. The trial court noted that the respondent had accomplished many of the tasks on the service plan but simply had not shown enough willingness to engage in meaningful counseling. The trial court found that the children were thriving in the guardianship of Reaves and that the services offered the mother had not been successful at accomplishing

unification. The trial court therefore concluded that it was in the best interests of the children to change the permanency goal to subsidized guardianship. Following the denial of her motion to reconsider, the respondent filed a timely notice of appeal.

The respondent's first contention on appeal is that the trial court's decision to change the permanency goal from "return home" to subsidized guardianship was against the manifest weight of the evidence. The respondent argues that she had complied with all service tasks contained within her service plan except for the single task of attending therapy every week. The respondent argues that she has maintained housing and employment and has corrected the conditions that led to the initial removal of the children. The respondent also relies on the written report of Charley Knapp, which recommends that the children be returned home.

■ Section 2—28 of the Juvenile Court Act of 1987 (705 ILCS 405/ 2—28 (West 1998)) requires the trial court to establish a permanency goal that is in the best interest of the child. When reviewing the trial court's determination of a child's best interest, " 'wide discretion is vested in the trial judge to an even greater degree than any ordinary appeal.' " *In re D.L.*, 226 Ill. App. 3d 177, 185 (1992), quoting *In re Martin*, 31 Ill. App. 3d 288, 293 (1975). A trial court's determination will not be disturbed unless the trial court exceeded its broad discretion or the trial court's determination is palpably against the manifest weight of the evidence. *In re Stilley*, 66 Ill. 2d 515, 520 (1977); *In re J.H.*, 304 Ill. App. 3d 188, 200 (1999).

■ After a careful review of the record, we cannot say that the trial court's decision to change the permanency goal to subsidized guardianship was against the manifest weight of the evidence. Although the respondent had corrected many of the conditions that had been the basis for the children's removal, the evidence presented at the hearing clearly established that the respondent had not complied with family counseling as ordered by the trial court. Over the course of four years, the respondent was repeatedly given the opportunity to take advantage of counseling services, but she failed to complete the ordered counseling. Family counseling was especially important given evidence that the children continued to have concerns of abandonment and neglect and difficulty communicating with their mother.

The evidence also demonstrated that the children were thriving in the care of Reaves. Spears reported that Reaves had been successful in providing the children a stable home environment for the previous four years and that Reaves was willing to continue to care for the children and accept guardianship. Given the age of the children, the length of time that they had already been in the care of Reaves, and the fact

that the children were doing well in the care of Reaves, we cannot say that the trial court erred in finding that the children's best interests would be served by remaining with Reaves.

Nor do we believe that the trial court erred in failing to adopt Knapp's recommendation that the children be returned home. Knapp's recommendation was based on three sessions with the respondent over the course of three months. As Knapp acknowledged in his written report, the quantity of time spent with the respondent had been brief. Moreover, the evidence demonstrated that the respondent missed several scheduled sessions with Knapp during this period. Based on such limited contact, we do not believe that the trial court erred in according little weight to Knapp's recommendation. Rather, for the reasons discussed above, we believe that the State introduced sufficient evidence to support the recommended change in the permanency goal.

The respondent's second contention on appeal is that the trial court abused its discretion by placing a one-hour time limit for the permanency hearing. The respondent argues that, because of this time limit, she was unable to fully cross-examine Spears and she was unable to present her entire case. The State responds by arguing that the respondent had the opportunity to provide the trial court with all probative information.

■ Our research has uncovered no case similar to the circumstances presented in the case at bar. Although we are aware of a number of cases holding that the trial court has wide discretion in handling the cases on its own docket (*Hilgenberg v. Kazan*, 305 Ill. App. 3d 197, 207 (1999)), we are aware of no case in which a trial court imposed a predetermined time limit on the length of an evidentiary hearing. Given the importance of establishing a permanency goal, we do not believe that it is appropriate for the trial court to establish an artificial time limit to present evidence. Although we certainly acknowledge that the trial court has the authority to limit repetitive and irrelevant evidence, we do not believe that the trial court can properly predetermine the appropriate length of the proofs. Fairness requires that the parties have the opportunity to introduce all relevant evidence at a permanency hearing, regardless of the resulting length of the proceeding.

In the instant case, two weeks prior to the evidentiary hearing, the trial court ruled that the hearing would be limited to one hour in duration. Then throughout the hearing, the trial court periodically reminded the parties that the hearing time was limited and that the hearing needed to be completed within an hour. At one point during the respondent's cross-examination of Spears, the trial court inter-

rupted the questioning to remind respondent's counsel that there was a one-hour time limit. Additionally, the State was only permitted to elicit testimony from one of its three witnesses. The trial court's own findings indicated that the hearing had been "abbreviated." Based upon our review of the record, we believe that the trial court's decision to limit the length of the hearing to one hour unnecessarily rushed the proceeding and was an abuse of discretion.

However, we do not believe that the respondent has established that she was prejudiced by the one-hour time limit. We note that the respondent never objected to the time limit when it was originally imposed or at any time during the evidentiary hearing. Despite the respondent's vague assertion on appeal that she was unable to present her entire case and fully cross-examine Spears, the respondent has made no showing of what additional materials she would have introduced. The respondent did not request the opportunity to make an offer of proof during the hearing or otherwise indicate what additional testimony or evidence she wished to elicit. Although it is true that the State was not allowed to present two of its witnesses, any resulting prejudice flowed to the State and not the respondent. Lacking any showing of prejudice, we do not believe that the respondent is entitled to a new evidentiary hearing. Rather, for the reasons already discussed, we believe that there was sufficient evidence presented at the hearing to warrant a change in the permanency goal.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON and GALASSO, JJ., concur.