**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250215-U

Order filed January 27, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| DHARA MEHTA, n/k/a SHAH, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellant | ) | |
| | ) | Appeal No. 3-25-0215 |
| | ) | Circuit No. 15-D-1855 |
| and | ) | |
| | ) | |
| AMIT MEHTA, | ) | Honorable |
| | ) | Robert E. Douglas, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Anderson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   We affirm the trial court's imposition of restrictions on the mother's parenting time. We vacate the trial court's orders requiring the mother's payment of a monthly sum for the children's medical insurance and expenses and awarding the father attorney fees incurred in obtaining a contempt order and remand the cause for further proceedings. Affirmed in part, vacated in part, and remanded.

¶ 2      Petitioner, Dhara Mehta (now known as Shah), appeals from the trial court's orders

granting respondent's, Amit Mehta's, petition to modify the parties' amended judgment for

allocation of parental responsibilities, granting in part Amit's contempt petition and his petition for attorney fees, and denying Dhara's motion for reconsideration. For the following reasons, we affirm in part, vacate in part, and remand the cause for further proceedings consistent with this disposition.

¶ 3                                    I. BACKGROUND

¶ 4        Dhara and Amit were married in 2008 and have two minor children (born in 2010 and 2013). In September 2015, the parties filed cross-petitions for dissolution of marriage. On November 30, 2015, the trial court entered a dissolution judgment, which incorporated the parties' marital settlement agreement (MSA) and joint parenting agreement (JPA). The relevant provisions of the MSA included the parties' mutual waiver of any right to maintenance; the parties' agreement that neither party was obliged to pay child support; and Dhara's agreement to contribute $500 monthly toward child-care expenses and pay "the cost of the health insurance premium, extra-curricular activities (with the activities to be decided jointly), preschool and kindergarten costs (with enrollment decisions to be made jointly), and any equipment and supplies needed for the activities, up to a cap of $1,500" (and that if the balance exceeds the cap, the balance shall be divided equally). The MSA also provided that Dhara "shall, at her sole expense, maintain primary major medical insurance coverage for the benefit of the children" until their emancipation. The JPA awarded Dhara parenting time each week from Sunday at 9 a.m. through Wednesday at 9 a.m. and alternating Saturdays at 9 a.m. to Sunday at 9 a.m. Extensive postdissolution litigation ensued, as summarized in relevant part below.

¶ 5                              A. Postdissolution Filings

¶ 6        On August 19, 2022, Amit filed a petition to modify the JPA pursuant to section 610.5 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/610.5 (West 2022)). On

April 7, 2023, the court entered an agreed amended judgment for allocation of parental responsibilities and parenting time (amended allocation judgment) pursuant to which Amit was granted sole decision-making authority for the children and allocated a majority of the parenting time (Dhara was awarded parenting time on alternating weekends during the school year and "Week-on/Week-off parenting time" during the summer).

¶ 7    In addition, the amended allocation judgment provides that Dhara is "responsible for health insurance premiums and deductibles" and that, if the medical costs for the children exceed the deductible of the health insurance, the parties will split the costs equally. Costs incurred by Amit "up to the deductible will be borne and reimbursed by [Dhara] to [Amit]" with reimbursement to be due within 14 days of official communication from Amit, including a copy of the receipt of payment. The amended allocation judgment further states that Dhara was to provide "PPO medical and dental insurance for the children until the statutory age limit, with a maximum deductible of $1,500 per child and a $3,000 maximum out-of-pocket expense per year." In the event of a lapse in coverage for any reason, Amit "may obtain health insurance for the children, and [Dhara] agrees to reimburse [Amit] within fourteen days." The parties stipulated that the amended allocation judgment supersedes the initial JPA.

¶ 8    On November 21, 2023, Amit filed, *inter alia*: (1) a petition to modify the amended allocation judgment, seeking residential custody, the majority of parenting time, and supervised and restricted parenting time for Dhara on grounds that it was in the children's best interests and that Dhara had regularly failed to follow the terms and conditions of the amended allocation judgment with respect to parental responsibilities, care of the children, and the parties' conduct; and (2) a two-count rule to show cause against Dhara as to why she should not be held in indirect civil contempt for failure to provide her share of the children's "emergency medical expenses

3

and physical therapy expenses in the amount of $652.45" (count I) and for failure to maintain the children's health insurance (count II). Eight days later, Dhara reimbursed Amit for the expenses. Thereafter, on January 8, 2024, Dhara filed a motion to modify her health insurance obligation, stating that her employer had notified her that the PPO plan was no longer available to her given her move into a higher income tier. Dhara also filed, on March 27, 2024, a petition to modify parenting time seeking, *inter alia*, additional parenting time. The trial court set the matter for a hearing on all pending matters.

¶ 9                                    B. Hearing

¶ 10        On June 26, 2024, a two-day hearing commenced on the four pending petitions, *i.e.*, Amit's petition to modify the amended allocation judgment, Amit's petition for rule to show cause, Dhara's petition to modify health insurance provisions, and Dhara's petition to modify parenting time. Dhara proceeded as a self-represented litigant throughout the hearing. The court-appointed GAL and both parties testified.

¶ 11        In relevant part, the GAL testified that she interviewed Amit and Dhara individually, interviewed the children separately from their parents and separately from each other, and observed the parents with the children in her office. The GAL also spoke with the children's therapists and their step-mother and reviewed numerous emails from each party. The GAL found communications from Dhara to the children to be verbally or emotionally abusive and manipulative and recommended that "[a]ll text communications between the children and mom would be, at least for the next six months, through OFW [Our Family Wizard] as the parenting coach is working with mom on certain issues that would benefit the children." The GAL further recommended therapeutic parental coaching regarding communication and acknowledged that one of the therapists informed the GAL that the children had said that they wanted more time

4

with their mother. In response to the trial court's questioning, the GAL stated, "I don't recommend a restriction on parenting time at this point." Likewise, in a proposed agreed order submitted to the court prior to the hearing, the GAL did not include a recommendation that Dhara's parenting time be supervised.

¶ 12    The parties testified regarding various issues that have arisen during the parties' respective parenting time and the expenses at issue in Amit's petition for rule to show cause. Relevant to the issues on appeal are portions of Amit's testimony on direct examination. Namely, Amit testified as to his request that Dhara's parenting time be supervised "for a limited amount of time while *** there's some healing and *** while there's some coaching happening to prevent these situations in the future. Amit specified that he was not seeking child support and that "we're not talking finances here ***." Rather, as to count I of the petition for rule to show cause (for Dhara's failure to provide her share of the children's expenses), Amit testified that, "if we were looking at things like their [the children's] health insurance and some of the other pieces that go into raising a kid, you know, I'm not asking for her to like buy them clothes and stuff, but I think like 1200 a month is the number that I had—I had come up with doing some math. It's an inexact number, but I think that's a reasonable number that would cover like a—basically for me to cover the cell phones and the insurance and all the other things that go into go into providing for the kids in—in that respect." Amit explained that he was seeking a monthly contribution from Dhara for her half of the expenses for the children's necessities, rather than a monthly reimbursement, and then clarified that "it would be 700 per child is what it came out to once you add everything in. So there was 1200 plus there was some incidentals, and so 700 per child until each of them reaches emancipation is what I recall putting in."

¶ 13    At the conclusion of Amit's direct examination, the trial court advised Dhara, "[J]ust so you know, [Amit's counsel] had him on the stand for 35 minutes. Your cross-examination is not to exceed 35 minutes." Following the cross-examination and prior to Dhara's testimony, the trial court stated that "[t]he rules are going to issue" and advised Dhara that the burden thus shifted to her to establish why she should not be held in contempt. After Dhara was sworn in, the trial court advised Dhara that it was allowing her to testify in the narrative "until 10 after 4:00" (the time at this point in the hearing is unclear from the record) and tell the court "[her] story and include in that why I shouldn't hold you in contempt for failing to pay the children's expenses, your share of the children's expenses and to maintain health insurance." Dhara responded that "[t]his part is just about the insurance," at which point the trial court instructed, "Nope, you can tell me whatever you want to tell me about what [the GAL] said." Dhara proceeded to testify that she had paid all outstanding expenses and that she had wanted to pay the bills directly on her credit card rather than reimbursing Amit. She also explained the situation regarding the unavailability of the prior health insurance plan through her employer. In addition, Dhara testified that she paid for the children's cell phones and that there had been disputes with Amit about the payment of clothes for the children and that the amount of Amit's request for a monthly contribution for the children's expenses was unreasonable given the disparity between the parties' income with Dhara making "nowhere near" Amit. She also testified in support of her request for unrestricted and additional parenting time and discussed her significant role in parenting duties.

¶ 14                    C. Trial Court's Ruling

¶ 15    On July 29, 2024, the trial court entered its written order on the four pending petitions. Regarding Amit's petition to modify the amended allocation judgment and Dhara's petition to modify parenting time, the trial court found by "clear and convincing evidence" that Dhara "has

6

engaged in a pattern of conduct that is harmful to the emotional and physical well-being of the Parties' children" such that a restriction on Dhara's parenting time was warranted pursuant to section 610.5 of the Act. 750 ILCS 5/610.5 (West 2022). The trial court found that the GAL testified credibly that Dhara had, *inter alia*, "engaged in excess calls and messaging to the children; that [Dhara] had used degrading, abusive and manipulative language in her texts to the children; threatening to withhold parenting time from the children as a punishment and making disparaging comments to the children about [Amit's] new wife." The trial court also found Dhara's testimony that these occurrences "were the fault of either the children [or] [Amit] or just meant in a good natured way" lacked both credibility and conviction. Accordingly, the trial court agreed with the GAL's recommendation that Dhara "undergo a course of therapeutic treatment *** for a minimum of [six] months." The trial court ruled that, during this time, Dhara's parenting time should be supervised. The trial court directed the GAL to submit an amended parenting order with the specified changes.

¶ 16        Regarding Amit's petition for rule to show cause, the trial court held Dhara in contempt under count I, finding that Dhara provided no credible evidence as to why she should not be held in contempt for failure to reimburse Amit for her share of the children's expenses in accordance with the amended allocation judgment. The trial court also granted Amit leave to petition for attorney fees related to count I. As to count II of the contempt petition, the trial court held that Dhara was not in contempt of court for failure to maintain the children's health insurance, finding her efforts, though not in compliance with the amended allocation judgment, were not done with willful disregard of the court's orders. However, the trial court ordered Dhara to contribute $700 monthly per child through a withholding order for the children's medical insurance as well as their expenses, given her inability to comply with the amended allocation

7

judgment as it concerns medical insurance. Upon "institution of the $1400.00 per month withholding order," Amit shall become "responsible for all of the children's health insurance premiums and school expenses as well as extra-curricular expenses for activities that [Amit] chooses, without further contribution from [Dhara]." Given these findings, the trial court found Dhara's petition to modify health insurance provisions moot. The trial court directed the GAL to submit an amended allocation judgment with specified changes.

¶ 17    Following the GAL's submission, the trial court entered an order on August 5, 2024, stating that it provided some modifications to the amended allocation judgment. In relevant part, the August 5, 2024, order provided that Dhara shall attend parenting coaching for a minimum of 6 months and 12 sessions with Dr. Lisa Irgang with the primary focus to be Dhara's communication with the children. The order also provided,

> "After successful completion of the minimum number of sessions over 6 months, coaching will continue at a cadence of Dr. Irgang's choosing until she determines that Dhara may discontinue. Upon completion of the parent coaching program, Dr. Irgang will provide Dhara and Amit a document of strategies Dhara will implement moving forward. Failure to adhere to the strategies by Dhara will result in restarting of parent coaching sessions for a minimum of 12 sessions over 6 months."

¶ 18    In addition, the order provided that, until Dhara completed the minimal level of parent coaching and "provides proof to the Court of her completion," Dhara was limited in texting and calling the children by time and through Our Family Wizard [OFW] and that, during that coaching time, Dr. Irgang would review the OFW messaging and calls and provide feedback to Dhara. Further, the order specified that the prior parenting time schedule was suspended and that "Dhara shall be limited to supervised visitation of the children two times per month for up to 4

8

hours per session until the parent coaching program has been fully completed as determined by Dr. lrgang."

¶ 19    Finally, the trial court directed, as previously ordered, that:

"Beginning August 1, 2024, Dhara shall provide Amit with a monthly stipend of $700 per child until each reaches emancipation, due on the first of each month via Zelle. Accounting records, receipts or refunds will not be provided by Amit. Dhara shall not provide vehicles, car insurance, cell phones, eyeglasses, contact lenses, eye exams, and medical/vision/dental insurance for the children. In the next open enrollment cycle, Amit will begin providing medical insurance of his choosing and in according [*sic*] with the provisions set by the Amended Allocation Judgment[] for the children."

¶ 20    D. Dhara's Motions to Reconsider and the Parties' Additional Filings

¶ 21    On August 8, 2024, Dhara (now represented by counsel) filed a motion to reconsider the trial court's July 29, 2024, order. Dhara challenged the trial court's restriction on her parenting time on grounds that there was insufficient evidence of any serious endangerment, the trial court failed to make an appropriate finding of serious endangerment, and the restriction was neither in accordance with the GAL's recommendation nor in the children's best interests. Dhara also contested the evidentiary basis for the trial court's finding of contempt under count I and the $1,400 monthly contribution to the children's expenses. Dhara argued that there was no explanation as to the basis for this amount and that she currently contributed only "$315.11/month to maintain medical, vision and dental coverage for both children, which is nowhere near the $1400.00/month total being sought by Amit for medical expenses," and the children's other expenses were never quantified. According to Dhara, the "stipend" was

9

essentially an order of child support despite the parties' agreement that child support was not warranted and despite any consideration of the parties' financial circumstances.

¶ 22 On August 19, 2024, Dhara also filed a motion for immediate relief with respect to her parenting time and to clarify the July 29, 2024, order. On August 23, 2024, the trial court entered an order, *inter alia*, clarifying that Dhara's parenting time shall be supervised in her home and setting a briefing schedule on Dhara's motion to reconsider. Further, on August 27, 2024, Dhara filed a petition for indirect civil contempt and for attorney fees on grounds that Amit refused to allow visitation to take place at Dhara's home.

¶ 23 On August 29, 2024, Amit filed a petition for attorney fees pursuant to section 508(b) of the Act (750 ILCS 5/508(b) (West 2022)). In the petition, Amit stated that he "has incurred fees of $20,931.25 related to the Petition for Rule to Show Cause as well as the other pending pleadings during this time, but has calculated that half of that amount was more specifically incurred for the issue of the child-related expenses to which [Dhara] was found in contempt. Therefore, the sum of $10,465.63 is being requested by [Amit] for reimbursement." Amit further stated in the petition that the retainer agreement and "[t]he billing detailing the time expensed will be forwarded to the opposing attorney and tendered to the court under separate cover. These are the fees attributable to the issues of the child-related expenses." According to the petition, the rates charged are "customary charges for representation in such action and are fair in light of the attorney's experience and standards established by custom and usage in the community," and "[t]he amount charged is reasonable in this matter."

¶ 24 Subsequently, on October 22, 2024, Amit filed a motion for entry of a withholding order to secure Dhara's $1,400 monthly contribution to the children's health insurance and expenses. Amit also filed a petition for indirect civil contempt and attorney fees, alleging Dhara's

10

noncompliance with the July 29, 2024, and August 5, 2024, orders, by, *inter alia*, initiating secret contact with the children. Dhara's motion to reconsider and Amit's attorney fee petition were continued for a hearing, and the other pending motions and petitions were scheduled for a September 2, 2025, hearing.

¶ 25    Prior to the scheduled hearing dates, on January 29, 2025, Dhara filed a motion to modify parenting time, stating that she had completed the court-ordered parent coaching. Dhara sought to eliminate the restrictions on her parenting time and increase the amount of her parenting time. On February 14, 2025, Amit filed a motion to reappoint the GAL, noting that Dr. Irgang's December 31, 2024, report to the trial court recommended that Dhara develop additional coping strategies. Amit challenged that Dhara had "successfully completed" the minimum number of parent coaching sessions, as required by the trial court's August 5, 2024, order.

¶ 26    On April 7, 2025, following briefing and a March 17, 2025, hearing, the trial court entered an order, denying Dhara's motion to reconsider, finding that it had not misapplied the law in its July 29, 2024, decision and that "[n]o new evidence has arisen since the hearing and the statutes have not changed." In its April 7, 2025, order, the trial court also granted Amit's fee petition, stating that Amit "is awarded fees in the amount of $4800.00" to be paid within 90 days of the order.

¶ 27    On April 21, 2025, Dhara moved for a stay of the April 7, 2025, order on grounds, *inter alia*, that she lacked the financial ability to pay the monthly $1,400 contribution and the attorney fee award. She also moved for a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying either enforcement or appeal or both with respect to the trial court's April 7, 2025, order. On June 13, 2025, the trial court denied Dhara's motion for a stay but granted Dhara's motion for a Rule 304(a) finding "with respect to

11

the issues of 508(b) fees and the requirement that she [Dhara] pay Amit $1,400 per month as ordered on 7-29-24." On April 24, 2025, Dhara filed a notice of appeal from the trial court's April 7, 2025, order.[1]

¶ 28                                    II. ANALYSIS

¶ 29         On appeal, Dhara challenges the trial court's restriction on her parenting time, the order to pay a monthly contribution of $1,400 toward the children's expenses, and the attorney fee award. Initially, we address our jurisdiction. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) (a reviewing court has an independent duty to consider its jurisdiction). While several claims remain pending in the trial court, we have jurisdiction to review the trial court's orders with respect to the restrictions on Dhara's parenting time pursuant to Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016) ("[a] custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the [Act]" is appealable without a Rule 304(a) finding). Moreover, we have jurisdiction to review the remaining issues Dhara raises on appeal given the trial court's entry of the Rule 304(a) finding. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) ("If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both.").

---

[1] We note that, given the parties' extension requests, motion practice directed at this court's jurisdiction, initial striking of appellant's brief, and supplements to the record, there is good cause shown for issuing this decision beyond the deadline for deciding accelerated appeals involving child custody or allocation of parental responsibilities. See Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018); *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 69 (finding good cause for issuing decision after deadline where there were multiple extensions of time requested by the parties, among other procedural delays).

12

¶ 30    Amit also suggests that, because Dhara's notice of appeal only specified the April 7, 2025, order, we lack jurisdiction to review any other order. See Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017) (the notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court"). We disagree, as we may review unspecified orders that are a step in the procedural progression leading to the judgment specified in the notice of appeal. See *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 689-90 (1994). We therefore turn to the merits of Dhara's arguments.

¶ 31                              A. Restrictions on Parenting Time

¶ 32    First, Dhara challenges the restrictions on her parenting time. Section 603.10(a) of the Act (750 ILCS 5/603.10(a) (West 2022)) provides that the court "shall enter orders as necessary to protect the child" if, after a hearing, the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development. A court engages in a two-step process when restricting parenting time. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 58. Initially, the court must make a factual determination as to whether the parent's conduct rose to the level of serious endangerment. *Id.*; *In re Marriage of Hipes*, 2023 IL App (1st) 230953, ¶ 43. The party seeking to restrict parenting time has the burden of proving serious endangerment. *Marriage of Hipes*, 2023 IL App (1st) 230953, ¶ 43. If the evidence presented is sufficient to make such a finding, then the court must enter orders necessary to protect the child, which may include, *inter alia*, a reduction or other adjustment to parenting time and/or decision-making responsibilities, supervised parenting time, restraints on the parent's communications with the child, or other constraints or conditions deemed necessary to ensure the child's safety

13

and welfare. 750 ILCS 5/603.10(a) (West 2022); *Marriage of Hipes*, 2023 IL App (1st) 230953, ¶ 54.

¶ 33 On appeal, we consider whether the trial court's finding of serious endangerment is against the manifest weight of the evidence. *Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 59. A ruling is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *Id.* We review the trial court's determination that certain restrictions are necessary for an abuse of discretion. *Id.* ¶ 61. A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Marriage of Hipes*, 2023 IL App (1st) 230953, ¶ 54.

¶ 34 Dhara argues that the record does not support the trial court's finding of serious endangerment. Having reviewed the record, we disagree. The trial court found "by clear and convincing evidence" (not just by a preponderance of the evidence—the express statutory standard) that Dhara "has engaged in a pattern of conduct that is harmful to the emotional and physical well-being of the Parties' children" such that a restriction on Dhara's parenting time was warranted. In support, the trial court relied on the GAL's testimony that Dhara had engaged in excess calls and messaging to the children and used "degrading, abusive and manipulative language" in her texts to the children, including threats to withhold parenting time as a punishment. The trial court also found Dhara's characterization of these occurrences as Amit's or the children's fault or meant in a good-natured way as lacking both credibility and conviction. Dhara offers no persuasive argument that the trial court's finding of serious endangerment was against the manifest weight of the evidence.

¶ 35 Dhara further maintains that the restrictions imposed on her parenting time amounted to an abuse of the trial court's discretion. Initially, Dhara complains that, contrary to the trial

14

court's order, the GAL did not recommend a restriction on Dhara's parenting time. However, the trial court was not bound by the GAL's recommendations. See *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 51. Still, Dhara challenges the trial court's ruling that she be allowed unrestricted parenting time only if she "fully" completes parent coaching, "as determined by Dr. Irgang." According to Dhara, the trial court abused its discretion by delegating the resolution of Dhara's parenting time to a third party. Dhara argues that "it is the public policy of this state that courts have an independent duty to ensure that the arrangements made by divorcing parents that directly affect their children—those relating to custody, child support, and visitation—are in the best interest of the children." *In re Marriage of Iqbal*, 2014 IL App (2d) 131306, ¶ 35. She further points out that the terms of court orders or agreements that affect child support, custody, and visitation are subject to court oversight and must be approved by the court to be enforceable. *Id.* ¶ 36.

¶ 36 A close review of the trial court's order belies Dhara's argument. In setting forth the constraints on Dhara's parenting time, the trial court ordered Dhara to attend at least 12 sessions of the specified parenting coaching with Dr. Irgang for a minimum six-month time period. The trial court further ordered that, after successful completion of the required attendance, "coaching will continue at a cadence of Dr. Irgang's choosing until she determines that Dhara may discontinue." Moreover, the trial court limited Dhara's parenting time to supervised visitation during two monthly four-hour sessions "until the parent coaching program has been fully completed as determined by Dr. lrgang." Thus, rather than delegating its authority to Dr. Irgang, the trial court simply imposed constraints on Dhara's parenting time while Dhara received parental coaching and relied upon Dr. Irgang's expertise to advise the court in its ultimate decision as to when to terminate supervised parenting.

¶ 37        As a final matter, Dhara contends that she was deprived of her fundamental interest as a parent in the care, custody, and control of her children without due process of law. Specifically, Dhara challenges the trial court's imposition of time restrictions on her cross-examination of Amit and on her narrative testimony. However, Dhara neither objected nor requested to make an offer of proof as to any additional testimony and fails to show any basis for prejudice from the time restrictions. See *In re E.I.*, 309 Ill. App. 3d 392, 398-99 (1999) (while the trial court abused its discretion in limiting the permanency hearing to one hour, the respondent neither objected nor made an offer of proof and her "vague assertion on appeal that she was unable to present her entire case and fully cross-examine [the caseworker]" failed to establish prejudice). We note that, although Dhara proceeded as a self-represented litigant, she was bound to comply with the same rules and held to the same standards as attorneys. See *Zemater v. Village of Waterman*, 2020 IL App (2d) 190013, ¶ 19. In sum, the restrictions imposed on Dhara's parenting time do not present a basis for reversal.

¶ 38                            B. Children's Expenses

¶ 39        Second, Dhara challenges the order to pay Amit a monthly "stipend" of $1,400 for medical insurance and the children's expenses. Dhara argues that the monthly stipend was tantamount to child support (despite the parties' agreement that neither Amit nor Dhara was required to pay child support) because it was a fixed, finite, monthly amount. See 750 ILCS 5/505 (West 2022). As such, Dhara argues that the order did not comport with Illinois law in that the trial court set the monthly amount without applying the statutory guidelines and without requiring the parties to exchange the requisite financial affidavits or evidence of their income. Dhara recognizes that the trial court may allocate expenses for extracurricular activities and school expenses but argues that, here, the trial court erroneously not only failed to consider the

16

parties' financial circumstances in fashioning the award but also did not require any evidence of the cost of such fluctuating expenses. See 750 ILCS 5/505(3.6) (West 2022). Amit disputes that the award amounted to child support and argues that the trial court properly ordered Dhara to pay him $1,400 a month to cover health insurance premiums and the children's other expenses, as specified by the trial court in its orders.

¶ 40    Initially, we note that the procedural origin of this dispute was Amit's two-count rule to show cause against Dhara as to why she should not be held in indirect civil contempt for failure to provide her share of the children's "emergency medical expenses and physical therapy expenses in the amount of $652.45" (count I ) and for failure to maintain the children's health insurance (count II). Following a hearing, the trial court ultimately held Dhara in contempt on count I only and found that Dhara's failure to maintain the children's health insurance was not done in willful disregard of the court's order. From there, the trial court entered its July 29, 2024, order, requiring Dhara to contribute $700 monthly per child for the children's medical insurance as well as their expenses, given her inability to comply with the amended allocation judgment as it concerns medical insurance and ordered that that Amit become "responsible for all of the children's health insurance premiums and school expenses as well as extra-curricular activities." Subsequently, in its August 5, 2024, order, the trial court stated that Dhara was required to pay Amith a "monthly stipend of $700 per child until each reaches emancipation" without the need for Amit to provide receipts and that Dhara "shall not provide vehicles, car insurance, cell phones, eyeglasses, contact lenses, eye exams, and medical/vision/dental insurance for the children."

¶ 41    Accordingly, the trial court's order reflects that the $1,400 monthly contribution is intended to cover the cost of health insurance for the children as well as the specified expenses.

17

However, Amit never filed a motion to allocate these expenses. Moreover, in addition to the lack of evidence regarding the parties' financial circumstances, there was no evidence presented as to the cost of each particular expense, including the cost for Amit to place the children on his insurance. Rather, Amit testified broadly as to the expenses at issue in his petition for rule to show cause. Regardless of the label, the order requiring Dhara to pay Amit $1,400 per month simply lacks a sufficient evidentiary basis. We therefore vacate that portion of the order requiring Dhara to pay Amit $1,400 a month. We note that the trial court found Dhara's motion to modify her health insurance obligations moot given its ruling. We remand the cause to allow the opportunity for consideration of this motion as well as proper filings, if any, by the parties regarding the children's expenses. We express no opinion on the merits of this issue.

¶ 42                                    C. Attorney Fee Award

¶ 43        In her third and final argument on appeal, Dhara challenges the trial court's grant of Amit's section 508(b) petition for attorney fees. Section 508(b) of the Act provides in relevant part that, "[i]n every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." 750 ILCS 5/508(b) (West 2022). "Section 508(b) makes mandatory the imposition of attorney fees where the party seeking the enforcement of a court order prevails and the court finds that the other party's failure to comply was without compelling cause or justification," with the trial court's only consideration being the reasonableness of the attorney fee award. *In re Marriage of Hyman*, 2024 IL App (2d) 230352, ¶ 9. Factors for a court to consider in determining the reasonableness of fees include the nature of the case, the complexity of the issues involved, the importance of the

matter, the attorney's standing and skill, the degree of responsibility required, the usual and customary charges for similar work, the benefit to the client, and whether there is a reasonable connection between the fees requested and the amount involved in the litigation. *Id.* We will not reverse a trial court's award of attorney fees absent an abuse of discretion. *Id.*

¶ 44    Initially, Dhara appears to challenge the underlying contempt finding on grounds that the trial court did not formally issue a rule to show cause. The record, however, demonstrates that, at the conclusion of Amit's testimony, the trial court ruled that "[t]he rules are going to issue" and allowed Dhara to testify in the narrative as to why she should not be held in contempt for failing to maintain the health insurance and pay her share of the children's expenses. Still, Dhara contends that she "should never have been held in contempt in the first place" because she paid Amit the amount owed soon after the contempt petition was filed, the delay was due to Amit's failure to provide receipts, and Dhara sought to pay providers directly rather than reimburse Amit. However, Dhara does not develop these arguments with supporting legal authority, and our review of the record reflects no persuasive basis for reversal on these grounds.

¶ 45    Dhara further maintains that the amount of the fee award was unreasonable. She argues that the $4,800 in attorney fees awarded was disproportionate to the $652.45 in expenses for which she was held in contempt for failing to reimburse. In his section 508(b) petition, Amit sought $10,465.63 in attorney fees incurred for the issue of child-related expenses for which Dhara was found in contempt. Ultimately, the trial court awarded Amit $4,800 in attorney fees. Dhara argues that Amit never provided itemized billing statements; thus, the trial court could not have assessed the reasonableness of the fees incurred. However, while neither party mentions it, a review of the transcript of the March 17, 2025, hearing reflects that the billing statements were apparently provided to both counsel and the court. That being said, the record does not reflect the

19

trial court's rationale for the amount of the fee award. Rather, in its April 7, 2025, order, the trial court merely stated that Amit's petition was granted in the amount of $4,800 (and not the $10,465.63 sought by Amit in the petition). Consequently, our ability to analyze whether the award was an abuse of discretion is hindered. " 'It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination.' [Citation.] While the explanation need not be painstaking, 'the order awarding fees, read against the backdrop of the record as a whole, must expose the [] court's thought process and show the method and manner underlying its decisional calculus.' [Citation.]" *Robinson v. Point One Toyota, Evanston*, 2017 IL App (1st) 152114, ¶ 25. We therefore vacate the attorney fee award and remand to allow the trial court to set forth the basis for its reasonableness determination. See *Marriage of Hyman*, 2024 IL App (2d) 230352, ¶ 10 ("Because the abuse of discretion standard presupposes a reasoned exercise of discretion, the lack of an explanation for a reduction of fees often is sufficient to constitute an abuse of discretion when the reasons for an unexplained decision are not apparent from the record. [Citation.] When presented with such circumstances, a reviewing court remands the cause to the trial court to allow the trial court to state its reasons for its decision."). We express no opinion on the reasonableness of the fees.

¶ 46                                    III. CONCLUSION

¶ 47        For the reasons stated, we affirm the judgment of the circuit court of Du Page County in part, vacate in part, and remand for further proceedings consistent with this disposition.

¶ 48        Affirmed in part, vacated in part, and remanded.

20